WISCONSIN INSURANCE SECURITY FUND
and Eau Galle Cheese Factory,
Plaintiffs-Appellants,

v.

LABOR AND INDUSTRY REVIEW COMMISSION and David
Kallstrom, Defendants-Respondents.

Court of Appeals

*No. 2004AP2157. Submitted on briefs February 10, 2005.
—Decided October 20, 2005.*

2005 WI App 242

(Also reported in 707 N.W.2d 293.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Christopher D. Walther* of *Walther Law Offices, S.C.*, Milwaukee.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *William W. Cassel*, Madison.

On behalf of the defendant-respondent David Kallstrom, the cause was submitted on the brief of *Jeffrey J. Klemp* of *Wagner Law Firm, S.C.*, Menomonie.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. LUNDSTEN, P.J.   This is a worker's compensation case. An employer, Eau Galle Cheese Factory, and the Wisconsin Insurance Security Fund appeal an order

of the circuit court affirming an order of the Labor and Industry Review Commission regarding a worker's compensation claim. The Commission's order granted employee David Kallstrom's claim for compensation for a back injury, and ordered that Eau Galle Cheese reimburse Kallstrom's health insurance carrier, Benefit Plan Administrators, for reasonably required medical expenses it incurred. The Fund is involved because Eau Galle Cheese's worker's compensation insurer was in liquidation.

¶ 2.   Eau Galle Cheese argues that the Commission misinterpreted the law governing compensable occupational diseases.[1] According to Eau Galle, in the absence of identifiable traumatic injury-causing events, there can be no occupational disease injury. Eau Galle Cheese also argues that the evidence is insufficient to support the Commission's finding of a compensable occupational back injury. The circuit court rejected these arguments. We likewise reject them, and affirm the circuit court.

¶ 3.   On a separate topic, Eau Galle Cheese argues that the Commission erred when it ordered Eau Galle to reimburse Kallstrom's health care insurer for expenses that the insurer incurred treating Kallstrom's compensable occupational back injury. Eau Galle Cheese argues that when a subrogated insurer, such as

---

[1] Eau Galle Cheese and the Fund submitted joint briefs. The Commission and Kallstrom submitted separate briefs, but for the most part make the same arguments. Kallstrom's brief adopts the Commission's arguments by reference. Throughout this decision, when we refer to arguments made by Eau Galle Cheese and the Fund, we will refer to those parties collectively as Eau Galle Cheese. Similarly, when referring to arguments made by the Commission and Kallstrom, we will refer to those parties collectively as the Commission.

Kallstrom's health care insurer, has paid medical expenses that arise from a compensable occupational injury under the worker's compensation statutes, and when, as here, the employer's worker's compensation insurance carrier is in liquidation, WIS. STAT. § 646.31(11) (2003–04)[2] precludes the Commission from ordering the employer to reimburse the subrogated insurer. We agree and, therefore, reverse both the circuit court and the Commission in this respect.

## *Background*

¶ 4.    David Kallstrom began working for Eau Galle Cheese Factory in 1985. His work there required him to manually cut small blocks of cheese from larger blocks and manually stack the smaller blocks. The smaller blocks, together with the hoop used in stacking, averaged about thirty-five pounds. In August of 2000, Kallstrom was diagnosed with a herniated disk. An orthopedic surgeon, Dr. T. Sunil Thomas, diagnosed Kallstrom's condition as degenerative disk disease and disk herniation. Kallstrom underwent two surgeries to relieve the pain. He now suffers a 15% permanent partial disability as a result of his back problems. Kallstrom's health insurance carrier, Benefit Plan Administrators, covered $27,155.36 in medical expenses relating to this back injury.

¶ 5.    In 2001, Kallstrom filed a claim with the Worker's Compensation Division of the Department of Workforce Development. Kallstrom asserted that his back injury was due to working fifteen years as a cheese maker at Eau Galle Cheese. The claim alleged that years of "extensive, frequent, and repetitive bending,

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

lifting and twisting while cutting, forming and pressing cheese" was responsible for the injury. Both Eau Galle Cheese and its worker's compensation insurer, Reliance National Insurance Company, disputed the claim. At some point during these proceedings, the Wisconsin Insurance Security Fund assumed liability for Reliance when that company became insolvent and entered liquidation proceedings.

¶ 6. At a hearing on the matter, Eau Galle Cheese presented testimony from Dr. Stephen Barron. Dr. Barron gave extensive testimony explaining why he believed that it was not possible to identify Kallstrom's work at the cheese factory as the cause of his injury. The Commission also had before it the opinions of various treating physicians, including Dr. T. Sunil Thomas's opinion that Kallstrom's employment had caused the degenerative back condition. The Commission found that Kallstrom had sustained a compensable occupational back injury. Among other relief, the Commission ordered "the employer and its insurance carrier" to reimburse Kallstrom's health insurance carrier, Benefit Plan Administrators, the sum of $27,155.36.

¶ 7. Eau Galle Cheese and the Fund challenged the Commission's decision in circuit court. The circuit court issued an order affirming the Commission's order. The circuit court's order also clarified that the "Fund is not liable for Medical reimbursement" to Kallstrom's health care insurer. Although both parties discuss this issue in their respective briefs, the end result is that all parties agree the Fund is not liable.

### Discussion

### I. Occupational Disease Injury

¶ 8. The Commission found that Kallstrom suffered a compensable occupational disease injury as a

211

result of repetitive strenuous job activity over an extended period of time. The Commission adopted Dr. T. Sunil Thomas's opinion that Kallstrom's back had " 'wor[n] out' after years of labor intensive work" at the Eau Galle Cheese Factory. In effect, the Commission concluded that, although there was no evidence that Kallstrom's back injury was the result of identifiable traumatic work-related injuries, his back injury was nonetheless compensable because Kallstrom's work at the cheese factory was a material contributory factor causing that injury.

¶ 9. The parties dispute whether a back injury caused by job activity, but not caused by one or more identifiable traumatic events, is a compensable occupational "disease" injury within the meaning of Wis. Stat. § 102.03(1)(e).[3] Eau Galle Cheese argues that such an injury is not covered by § 102.03(1)(e) because it does not fit any existing definition of "occupational back disease" found in the case law. More specifically, Eau Galle Cheese argues that such an injury is not compensable under either *Lewellyn v. DILHR*, 38 Wis. 2d 43, 155 N.W.2d 678 (1968), or *Shelby Mutual Insurance Co. v. DILHR*, 109 Wis. 2d 655, 327 N.W.2d 178 (Ct. App. 1982). The Commission responds that Kallstrom's injury is a compensable injury caused by a "disease" within the meaning of § 102.03(1)(e) because that in-

---

[3] Wisconsin Stat. § 102.03(1)(e) provides an employer's primary liability for work-related injuries, including occupational diseases. Specifically, that statute states:

(1) Liability under this chapter shall exist against an employer only where the following conditions concur:

. . . .

(e) Where the accident or disease causing injury arises out of the employee's employment.

jury comports with our discussion of a compensable occupational back disease in *Shelby Mutual*. We agree with the Commission and first discuss *Shelby Mutual*.[4]

¶ 10.    Worker's compensation cases involve two types of compensable injuries:    those caused by accidents, and those caused by occupational diseases. *See Zabkowicz v. Industrial Comm'n*, 264 Wis. 317, 319, 58 N.W.2d 677 (1953). An accidental injury is one that "results from a definite mishap; a fortuitous event, unexpected and unforeseen by the injured person." *Shelby Mut.*, 109 Wis. 2d at 661 (citations omitted). An occupational disease injury is an injury that is "acquired as the result and an incident of working in an industry over an extended period of time." *Id.* (citations omitted). Here, we address the law regarding occupational disease injuries.

¶ 11.    Eau Galle Cheese takes a narrow view of *Shelby Mutual*. Eau Galle argues that *Shelby Mutual* stands for the limited proposition that a back injury caused by a disease is compensable only if the injury is caused by a series of identifiable traumatic work-related injury-causing events. For support, Eau Galle Cheese relies on our use of the phrase "repeated work-related back trauma" in *Shelby Mutual*. *Id.* at 662. We disagree with Eau Galle Cheese's interpretation of *Shelby Mutual*.

---

[4] The parties dispute what weight, if any, we should accord the Commission's interpretation of the law regarding occupational back disease. The three levels of deference are great weight, due weight, and *de novo*. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659–60, 539 N.W.2d 98 (1995). We conclude that, regardless of the applicable level of deference, we would affirm the Commission and, therefore, do not address the issue.

¶ 12. It is true that the facts before us in *Shelby Mutual* involved repeated identifiable injury-causing events to an employee's lower back while performing work duties. *Id.* at 657. But in that case we also recognized that a compensable occupational disease injury may occur in the absence of identifiable traumatic events. In particular, we observed that a compensable occupational disease injury may be " 'acquired as the result ... of working in an industry over an extended period of time.' " *Id.* at 661 (quoting *Rathjen v. Industrial Comm'n*, 233 Wis. 452, 460, 289 N.W. 618 (1940)). We quoted the *Rathjen* court's example of hernia cases:

> "The difference between an occupational disease and an affliction resulting from an accident [both of which are compensable] is illustrated in hernia cases. Where hernia follows as a result of a definite accident the employee suffers an accidental hernia, ... but where it develops as the result of certain types of lifting for a number of years, the employee may have an occupational hernia ...."

*Shelby Mut.*, 109 Wis. 2d at 662 (quoting *Rathjen*, 233 Wis. at 460–61; citations and emphasis omitted). Thus, in *Shelby Mutual* we recognized what is simple common sense: repetitive work activities may cause a compensable occupational disease injury even though the disease causing the injury is not caused by identifiable traumatic events.

¶ 13. Eau Galle Cheese argues that an occupational back injury can only be found compensable if it satisfies the third rule in *Lewellyn*.[5] This argument misses the mark. In *Lewellyn*, the supreme court dis-

---

[5] The third *Lewellyn* rule reads:

cussed the analysis that should apply when there is a *preexisting* degenerative condition. The court's lead-in to its three-rule analysis makes this clear: "From the preceding cases and others *dealing with preexisting degenerative conditions,* the following we feel represent an accurate appraisal of the factual situations which should determine whether or not the particular condition is recoverable . . . ." *Lewellyn,* 38 Wis. 2d at 58 (emphasis added). The situation we address here does not involve a preexisting condition; it involves an injury caused by work activity.

¶ 14. Moreover, whatever the reach of *Lewellyn's* three-rule analysis, it does not preclude our legal conclusion that a compensable occupational disease injury may occur in the absence of identifiable traumatic injury-causing events. This is apparent from the supreme court's subsequent decision in *Swiss Colony, Inc. v. DILHR,* 72 Wis. 2d 46, 240 N.W.2d 128 (1976).

¶ 15. In *Swiss Colony,* the supreme court addressed whether an employee's mental disability was a compensable occupational disease injury. The employee's work subjected her to numerous stresses and mounting pressures. She was eventually admitted to a hospital, suffering from weight loss, insomnia, exhaustion, and depression. Her diagnosis was schizophrenia. *Id.* at 49–50. The *Swiss Colony* court detailed the evidence showing that the employee's condition was caused by greater than normal "day-to-day mental stresses and tensions which all employees must experience," which is

If the work activity precipitates, aggravates and accelerates beyond normal progression, a progressively deteriorating or degenerative condition, it is an accident causing injury or disease and the employee should recover even if there is no definite "breakage."

*Lewellyn v. DILHR,* 38 Wis. 2d 43, 59, 155 N.W.2d 678 (1968).

215

the applicable test for "nontraumatically caused mental injury." *Id.* at 51. The court did not identify any particular injury-causing events, but rather described an environment that had a cumulative effect on the employee's mental health. *Id.* at 51–54. Pertinent here, the court rejected the argument that *Lewellyn* precluded finding a compensable occupational injury:

> *Lewellyn* clearly stands for the proposition that there is a compensable injury caused by an accident where there is "a definitely preexisting condition of a progressively deteriorating nature" and the work activity precipitates, aggravates or accelerates this condition beyond normal progression. In [this] case there is no indication at all that [the employee] had previously suffered any kind of mental disease or debility. On the contrary, all of the evidence in the record indicates that she had been in normal mental health until her gradual decline and eventual breakdown in October 1971. It is true that . . . mental health specialists believe that all schizophrenics have a genetic predisposition to this condition . . . . But this mere predisposition or propensity is not the definitely preexisting, and progressively deteriorating condition envisioned by *Lewellyn*. The condition of schizophrenia does not exist until it is created by life stresses, and in this case it did not exist at all until [the employee's] gradual decline and breakdown in the fall of 1971. This is not a case where there is a history or evidence of prior mental or mental-physical disabilities later aggravated by work stresses. Therefore, the *Lewellyn* rule was erroneously applied to the facts of this case.

*Swiss Colony*, 72 Wis. 2d at 54–55 (footnote omitted). Thus, whatever the full meaning and reach of *Lewellyn*'s three-rule analysis, it does not conflict with our conclusion that a compensable occupational disease

216

injury may occur in the absence of identifiable traumatic injury-causing events.

¶ 16.   In sum, we conclude that a compensable occupational disease injury may occur when an injury is caused by job activity over a period of time, regardless whether there are identifiable traumatic injury-causing events. Whether this standard is met in a particular case is a different matter. We next address whether the Commission properly concluded that Kallstrom suffered a compensable occupational disease injury.

## II. Substantial and Credible Evidence

¶ 17.   Eau Galle Cheese argues that the evidence is insufficient to support the Commission's finding of a compensable occupational back injury. Eau Galle's argument is twofold:   first, that assertions by Kallstrom's most recent treating physician were rendered incredible as a matter of law by contrary assertions by a different doctor and, second, that the evidence presented did not show that work at the cheese factory caused Kallstrom's injury. We reject both prongs of this argument.

¶ 18.   The applicable standard of review is found in *Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 286 N.W.2d 540 (1979). There, the supreme court stated:

> The test to be applied in reviewing the Department's findings is whether "there is any credible evidence in the record sufficient to support the finding made by the Department. The assumption in that test is, of course, that the evidence is relevant, that it is evidentiary in nature and not a conclusion of law, and that it is not so completely discredited by other evidence that a court could find it incredible as a matter of law." In applying

217

the credible evidence test, this court does not weigh conflicting credible evidence to determine what evidence shall be believed. If there is credible evidence to sustain the finding, irrespective of whether there is evidence that might lead to an opposite conclusion, we must affirm. There must be, however, such credible evidence that the findings will rest on facts and not on conjecture or speculation.

. . . .

In evaluating medical testimony, the Department is the sole judge of the weight and credibility of the witnesses. The commission's finding on disputed medical testimony is conclusive. Where there are inconsistencies or conflicts in medical testimony, the Department, not the court, reconciles the inconsistencies and conflicts.

*Id.* at 592–94, 598 (citations and footnote omitted). This "any credible evidence" test results in substantial deference to the Commission's fact finding. *See General Cas. Co. of Wis. v. LIRC*, 165 Wis. 2d 174, 178, 477 N.W.2d 322 (Ct. App. 1991).

¶ 19.   Eau Galle Cheese's attack on assertions by Kallstrom's treating physician fails because the attack relies on competing testimony the Commission found lacking in credibility. The contrary testimony was supplied by Dr. Stephen Barron. The Commission opined that Dr. Barron lacked credibility because of his reluctance to acknowledge that the strenuous work performed by Kallstrom at the factory could have been a material contributory factor in the onset of Kallstrom's back condition. We are not at liberty to reweigh Dr. Barron's testimony.

218

¶ 20. Furthermore, credible evidence affirmatively supports the Commission's findings. The nature of Kallstrom's work is undisputed. The work required Kallstrom to reach into the middle of a table that measured ten feet wide by five feet high so that he could manually cut large slabs of cheese with a hand-held knife. Kallstrom then used steel hoops to grasp the cheese blocks and manually stack them on a press. The average weight of these cheese blocks with the hoops was thirty-five pounds.

¶ 21. Kallstrom's most recent treating physician, Dr. T. Sunil Thomas, examined Kallstrom and discussed with him his work duties. The doctor also read Kallstrom's administrative testimony on the topic. Dr. Thomas stated that if the duration, frequency, and extent of workplace exposure was accurately described by Kallstrom, it was Dr. Thomas's opinion to a reasonable degree of medical probability that Kallstrom's work activities starting in 1985 and ending in 2000 were at least a material contributory factor in Kallstrom's back injury. There is no evidence in the record that Kallstrom had a back injury that preexisted his work at Eau Galle Cheese.

¶ 22. Eau Galle Cheese spends much time discussing conflicting evidence, or evidence that the Commission was entitled to reject. For example, Eau Galle complains that Kallstrom gave inconsistent testimony regarding the cause of his injury. However, the Commission was entitled to believe some of Kallstrom's statements, even if such statements conflicted with others he made. *See Wagner v. Industrial Comm'n*, 273 Wis. 553, 565, 79 N.W.2d 264 (1956) (where the same witness gives conflicting testimony, "the commission may base its decision on which of the two conflicting

pieces of testimony it chooses to believe, and, on review, a court would have no power to weigh the evidence and disturb such a finding").

¶ 23. Also, Eau Galle Cheese spends considerable time explaining why the evidence does not meet the legal standard for a compensable injury that Eau Galle Cheese gleans from *Lewellyn* and *Shelby Mutual*. But we have already rejected Eau Galle Cheese's view of the applicability of those two decisions.

■

¶ 24. This case involves the Commission weighing conflicting expert medical evidence. We do not reweigh the credibility of such evidence. *See Valadzic*, 92 Wis. 2d at 598. The Commission found Dr. Thomas's assertions to be more credible, and thus found that the degenerative disk condition was caused by work-related activities. Because there is credible evidence to support the Commission's finding, it will not be disturbed.

### III. WISCONSIN STAT. § 646.31(11)

¶ 25. Kallstrom's health care insurer, Benefit Plan Administrators, paid $27,155.36 for the medical treatment for Kallstrom's injured back. Once the Commission determined that Kallstrom's back injury was compensable under the worker's compensation statutes, Kallstrom's health care insurer was potentially entitled to reimbursement as a subrogated insurer. The Commission's decision ordered that Kallstrom's health care insurer be reimbursed $27,155.36 by "the employer and its insurance carrier."

¶ 26. The "employer" in the Commission's order is Eau Galle Cheese. The "insurance carrier" is Eau Galle Cheese's worker's compensation insurer, Reliance Insurance. Shortly after Kallstrom's worker's compensa-

220

tion claim was being processed, Reliance Insurance entered liquidation. Consequently, Reliance Insurance did not provide coverage.

¶ 27. The Wisconsin Insurance Security Fund is a party to this action because Eau Galle Cheese's insurer was in liquidation. The Fund pays appropriate claims arising from the inability of insolvent insurers to comply with their obligations as insurers. *See* WIS. STAT. § 646.31(1). However, the parties agree that under the circumstances in this case the Fund is statutorily exempt from reimbursing Kallstrom's health care insurer.[6] This means that the Commission's order effectively directs Eau Galle Cheese alone to reimburse Kallstrom's health care insurer $27,155.36 for expenditures for Kallstrom's injury. Eau Galle Cheese argues that this order is illegal.

¶ 28. The Commission argues that its order directing Eau Galle Cheese to reimburse Kallstrom's health care insurer is authorized by various provisions in WIS. STAT. ch. 102, the worker's compensation statutes. Eau Galle Cheese does not dispute that ch. 102 provides general authority for such an order. Instead, Eau Galle Cheese argues that a more specific statute,

---

[6] The Commission's brief states that because Eau Galle Cheese's insurance carrier, Reliance Insurance, is in liquidation, the Fund assumes responsibility for Reliance Insurance's obligations under the applicable worker's compensation insurance policy. *See* WIS. STAT. § 646.31(2)(d). An exception, the Commission admits, is that the Fund's obligation does not extend to reimbursement of a subrogated insurer, such as Kallstrom's health care insurer, pursuant to § 646.31(11). Thus, the Commission admits that it could not order the Fund to reimburse Kallstrom's health care insurer. In any event, the circuit court expressly ruled that the Fund is not liable for medical reimbursement, and neither the Commission nor Kallstrom appeals that part of the circuit court's order.

WIS. STAT. § 646.31(11), prohibits the order under the circumstances of this case. We agree.[7]

¶ 29. The parties correctly note that our review is *de novo*. We do not accord deference to the Commission's decision because this question involves construing WIS. STAT. § 646.31(11), a statute the Commission is not charged with administering, *see Epic Staff Management, Inc. v. LIRC*, 2003 WI App 143, ¶ 17, 266 Wis. 2d 369, 667 N.W.2d 765, and because the question is one of first impression for the Commission, *see DOC v. Schwarz*, 2005 WI 34, ¶ 15, 279 Wis. 2d 223, 693 N.W.2d 703.

¶ 30. We begin by assuming that the Commission is correct when it asserts that WIS. STAT. §§ 102.30(4), 102.30(7)(a), and 102.42(1) of the worker's compensation statutes confer general authority on the Commission to order both employers and their worker's compensation insurance carriers to reimburse health care insurers for expenditures relating to compensable injuries like the one in this case.[8] More specifically, we assume that if we considered only the worker's compen-

---

[7] Kallstrom's brief asserts that reliance on WIS. STAT. § 646.31(11) has been waived because an argument based on that statute was not timely raised before the circuit court. We do not address Kallstrom's waiver argument because, even if waiver applied, we would exercise our power to address the issue. *See Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 52, 245 Wis. 2d 772, 629 N.W.2d 727 (when an issue is one of law, has been fully briefed by the parties, and "is of sufficient public interest to merit a decision," this court may exercise its discretion to address it).

[8] WISCONSIN STAT. § 102.30(4) provides:

Regardless of any insurance or other contract, an employee or dependent entitled to compensation under this chapter may recover compensation directly from the employer and may enforce in

222

sation statutes, then Kallstrom's health care insurer would be entitled to reimbursement under § 102.30(7)(a) because that insurer is a "nonindustrial" insurer that made "improper" payments covering Kallstrom's medical expenses.

¶ 31. Though the Commission generally has the authority to order employers to reimburse employees' health care insurers, this case involves a specific circumstance covered by Wis. Stat. ch. 646. "When two statutes relate to the same subject matter, the specific statute controls over the general statute." *Wieting Funeral Home of Chilton, Inc. v. Meridian Mut. Ins. Co.*, 2004 WI App 218, ¶ 15, 277 Wis. 2d 274, 690 N.W.2d 442, *review denied*, 2005 WI 60, 281 Wis. 2d 114, 697 N.W.2d 472 (No. 2004AP461). In this case, Wis. Stat.

the person's own name, in the manner provided in this chapter, the liability of any insurance company which insured the liability for that compensation.

WISCONSIN STAT. § 102.30(7)(a) provides:

The department may order direct reimbursement out of the proceeds payable under this chapter for payments made under a nonindustrial insurance policy covering the same disability and expenses compensable under s. 102.42 when the claimant consents or when it is established that the payments under the nonindustrial insurance policy were improper.

WISCONSIN STAT. § 102.42(1) provides:

TREATMENT OF EMPLOYEE. The employer shall supply such medical, surgical, chiropractic, . . . and hospital treatment, medicines, medical and surgical supplies, . . . as may be reasonably required to cure and relieve from the effects of the injury . . . . The employer shall also be liable for reasonable expense incurred by the employee for necessary treatment to cure and relieve the employee from the effects of occupational disease prior to the time that the employee knew or should have known the nature of his or her disability and its relation to employment . . . .

§ 646.31(11) is more specific and, therefore, is controlling.

■

¶ 32.  The purpose of the Wisconsin Insurance Security Fund, created by Wɪs. Sᴛᴀᴛ. ch. 646, is to protect insureds in the event their insurance company becomes insolvent. This legislative purpose is expressed in Wɪs. Sᴛᴀᴛ. § 646.01(2)(a), which states:

> To maintain public confidence in the promises of insurers by providing a mechanism for protecting insureds from excessive delay and loss in the event of liquidation of insurers and by assessing the cost of such protection among insurers . . . .

*See Fireman's Fund Ins. Co. of Wis. v. Pitco Frialator Co.*, 145 Wis. 2d 526, 531, 427 N.W.2d 417 (Ct. App. 1988) ("[T]he primary purpose of the Wisconsin Insurance Security Fund, as stated in sec. 646.01(2)(a), reflects an . . . intention designed to protect insureds of insolvent companies . . . .").[9]

---

[9] In *Fireman's Fund Insurance Co. of Wisconsin v. Pitco Frialator Co.*, 145 Wis. 2d 526, 427 N.W.2d 417 (Ct. App. 1988), this court concluded that the Wisconsin Insurance Security Fund law acted to cut off a subrogated insurer's claim for reimbursement from an insured of an insurer in liquidation. *Id.* at 532. We concluded that, although there was no specific subsection that provided this type of protection to insured parties of insurers in liquidation, the law's purpose, as expressed in Wɪs. Sᴛᴀᴛ. § 646.01(2)(a), necessitated that result. *Fireman's Fund*, 145 Wis. 2d at 530–32. In other words, it appears that *Fireman's Fund* involved a situation that would have been covered by Wɪs. Sᴛᴀᴛ. § 646.31(11), but this court relied instead on § 646.01(2)(a) to find that the claim was barred. The reason for this, it seems, is that § 646.31(11) was

¶ 33. The plain language of WIS. STAT. § 646.31(11) prohibits the part of the Commission's order that is at issue here.[10] Kallstrom's health care insurer is, in the words of § 646.31(11), an "insurer . . . that has paid a claim and thereby has become subrogated or otherwise entitled to the amount of that claim." Consequently, under that statute, Kallstrom's health care insurer has no claim against Eau Galle Cheese because Eau Galle is "the insured of the insurer in liquidation." WIS. STAT. § 646.31(11). The Commission suggests no ambiguity in this language as it applies to this case, and we find none.

¶ 34. Although WIS. STAT. § 102.30(7)(a), read in isolation, authorizes the reimbursement of a subrogated insurer, the Commission points to nothing in the worker's compensation statutes that contemplates the specific situation in which a subrogated insurer seeks reimbursement from the insured of an insurer in liqui-

---

not yet applicable. The effective date of the amendment that created sub. (11) was April 28, 1988, and, unless liquidation proceedings were pending on that date, the subsection did not apply. 1987 Wis. Act 325, §§ 20, 23(2), 24. Because briefs in *Fireman's Fund* were submitted to this court on March 15, 1988, we assume that sub. (11) was not yet applicable.

[10] The full subsection provides:

> SUBROGATION CLAIMS. The fund is not required to pay any amount due from the insurer to any reinsurer, insurer, insurance pool or underwriting association as subrogation, contribution, or indemnification recoveries or otherwise, except as provided in sub. (2)(a). A reinsurer, insurer, insurance pool or underwriting association that has paid a claim and thereby has become subrogated or otherwise entitled to the amount of that claim may assert that claim against the liquidator of the insurer in liquidation but not against the insured of the insurer in liquidation.

WIS. STAT. § 646.31(11).

225

dation. WISCONSIN STAT. § 646.31(11), on the other hand, was drafted with this specific situation in mind.

¶ 35. The Commission argues that its interpretation furthers the purpose behind the Worker's Compensation Act, that is, to keep worker's compensation recoveries in the arena of the responsible employers and worker's compensation insurance carriers, rather than attaching liability to non-worker's compensation insurance carriers. For support, the Commission quotes from *Lisney v. LIRC*, 171 Wis. 2d 499, 493 N.W.2d 14 (1992):

> [T]he basic purpose of the Worker's Compensation Act [is] to provide financial and medical benefits to employees who are injured on the job "and to allocate the financial burden to the most appropriate source, the employer, and, ultimately the consumer of the product."

*Id.* at 522 (quoting *Brenne v. DILHR*, 38 Wis. 2d 84, 92, 156 N.W.2d 497 (1968)). However, there is no suggestion in *Lisney* or *Brenne* that the supreme court's attention was drawn to the additional considerations that arise when there is a choice between putting an expense burden on a solvent nonindustrial insurer or on an insured employer whose insurance carrier is in liquidation. WISCONSIN STAT. § 646.31(11) comes into play here because Eau Galle Cheese's worker's compensation insurance carrier was in liquidation. The situation would be different if, for example, Eau Galle Cheese had failed to purchase worker's compensation insurance. In that event, § 646.31(11) would afford Eau Galle Cheese no protection.

¶ 36. The Commission argues that WIS. STAT. § 646.31(11) is inapplicable because this case does not involve a "claim" by Kallstrom's health care insurer. According to the Commission, § 646.31(11) addresses

the rights and limitations of subrogated insurers, such as Kallstrom's health care insurer, who wish to make *claims* for reimbursement on their own behalf. We agree with Eau Galle Cheese that this argument ignores the reality of the Commission's order. The order does not direct Eau Galle Cheese *to* reimburse Kallstrom; it orders Eau Galle Cheese, whose insurer is in liquidation, to reimburse a subrogated health care insurer. Plainly, § 646.31(11) prohibits just such reimbursement by an insured.[11]

¶ 37. Finally, the Commission argues that Wis. Stat. § 646.31(11) is inapplicable because the Commission's order addresses Kallstrom's rights, not the rights of Kallstrom's health care insurer. The Commission states that Kallstrom's right to have his medical bills reimbursed stems from the employer's liability under Wis. Stat. § 102.42(1) and the reimbursement procedure in Wis. Stat. § 102.30(7)(a). We are not persuaded. Nothing before us suggests that Kallstrom's right to compensation is at stake. Rather, it is the right of Kallstrom's health care insurer to reimbursement that the Commission seeks to enforce.

---

[11] We note that a subrogated nonindustrial health care insurer may seek reimbursement under Wis. Stat. § 102.30(7)(a). In *Employers Health Insurance Co. v. Tesmer*, 161 Wis. 2d 733, 738–39, 469 N.W.2d 203 (Ct. App. 1991), we concluded that a subrogated insurer could petition the Commission for reimbursement of improperly paid medical expenses under § 102.30(7)(a). That right is dependent only on an employee's claim under Wis. Stat. § 102.42(1) and § 102.30(4) insofar as the claim against an employer must be successful for the nonindustrial insurer to be deemed "subrogated." *See Employers Health*, 161 Wis. 2d at 738–39. It seems, therefore, that it is the subrogated insurer's rights to reimbursement, and not the employee's rights, that are enforced under § 102.30(7)(a).

¶ 38. In sum, we conclude that when, as here, an insurer becomes subrogated by paying medical expenses arising from injuries that are compensable under the worker's compensation statutes, and the employer's worker's compensation insurance carrier is in liquidation, WIS. STAT. § 646.31(11) precludes the Commission from ordering the employer to reimburse the subrogated insurer for those expenses. Consequently, we remand with directions that the circuit court amend its order so that it directs the Commission to delete its directive that Eau Galle Cheese reimburse Kallstrom's health care insurer. In all other respects, we affirm the circuit court's order. Nothing in this opinion or in the Commission's order prevents Kallstrom's health care insurer from seeking reimbursement from the liquidator of Reliance Insurance.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.