COURT OF APPEALS
DECISION
DATED AND FILED

December 14, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1100**

Cir. Ct. No. **2019CV5690**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

CONWAY FREIGHT, INC./CONWAY CENTRAL EXPRESS,

PLAINTIFF-APPELLANT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION AND TIMOTHY J. ROTHE,

RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed.*

Before Brash, C.J., Dugan and White, JJ.

¶1 DUGAN, J. Conway Freight, Inc./Conway Central Express (Conway Freight) appeals an order of the circuit court affirming a decision from the Labor and Industry Review Commission (LIRC) in which Timothy J. Rothe was awarded worker's compensation benefits for an occupational injury that

resulted in Rothe's permanent total disability. On appeal, Conway Freight argues that LIRC's decision must be reversed because the decision changed the causation standard applicable in evaluating occupational injury cases without the authority to do so, and improperly included a non-work related condition in the determination that Rothe was permanently totally disabled. Conway Freight additionally argues that the medical opinion that LIRC relied on in making its decision was speculative and without foundation. Upon review, we affirm.

## BACKGROUND

¶2 The following facts are taken from the findings of the administrative law judge (ALJ) and LIRC. Rothe was born in 1957. He has a G.E.D. and attended truck driving school. He began working for Conway Freight in September 1989 as a truck driver and dock worker. He performed roughly the same duties and responsibilities during his twenty-five years of employment at Conway Freight, which primarily included loading, unloading, and transporting freight to and from various pickup and delivery sites. He frequently lifted loads weighing fifty pounds, and sometimes more. His tasks regularly required bending, twisting, turning, climbing, and stooping. His last day of employment with Conway Freight was August 18, 2014, and he has not returned to work at Conway Freight or obtained alternate employment since that time.

¶3 Rothe began treatment for back pain in 2000, and he regularly saw a chiropractor. In 2008, Rothe sustained a lower back injury at work while maneuvering a converter dolly. He reported continued lower back pain and even numbness on his right side following his injury, and about a month later, Rothe sought medical treatment and was diagnosed with "discogenic disc disease" and a herniated disc for which he received multiple steroid injections. The steroid

2

injections successfully alleviated his pain, and Rothe continued working without restrictions. However, Rothe returned to his doctor—an orthopedic surgeon—in 2011, complaining again of back pain and pain that radiated down his legs; at that time, he opted to forgo surgery in favor of additional steroid injections. While Rothe still continued to work without restrictions after receiving another round of steroid injections, he reported experiencing pain while performing certain physical tasks at work. In 2012, Rothe sought a second opinion from another orthopedic surgeon regarding the possibility of back surgery, but Rothe again opted for steroid injections. Rothe still reported increased pain with physical activities, such as the lifting he performed while at work. Rothe then received more steroid injections and regular chiropractic treatment throughout 2013 and 2014.

¶4 Rothe first saw Dr. James Lloyd, a neurosurgeon, in 2014 as a result of the increasing pain in his back and legs. By the time Rothe first saw Dr. Lloyd, Rothe was having difficulty walking and he would drag his feet when he walked. Dr. Lloyd recommended that Rothe undergo back surgery, and Dr. Lloyd took Rothe off work on August 18, 2014, in preparation for surgery. Rothe underwent lumbar fusion surgery in February 2015, but his back pain continued and even worsened following the surgery. Currently, Rothe drags his feet when he walks and uses a cane for assistance. Rothe is unable to sit comfortably for any length of time and has difficulty performing even routine tasks around the house.

¶5 Rothe filed an application in September 2014 for worker's compensation benefits related to the back injury he sustained on October 14, 2008; Rothe subsequently filed an amended application in January 2017, alleging that he had an occupational injury for which he was entitled to benefits. In particular, and as relevant here, he alleged that his employment at Conway Freight contributed to

the progression of a degenerative disc condition that ultimately required surgery and that he had been rendered permanently totally disabled.

¶6      Attached to his amended application was a report from Dr. Lloyd[1] in which Dr. Lloyd checked "Yes" in response to the following question:

> To a reasonable degree of medical probability, Mr. Rothe's work exposure as a dock worker/truck driver at Con[w]ay Freight for approximately 25 years (including an alleged event on 10/14/08) was a material contributory causative factor in the progression of his low back condition, resulting in the need for the February 2015 surgical procedure and resulting in permanent limitations?

In the space provided below, Dr. Lloyd then provided the following explanation of his opinion: "Knowing that the standard indicating a workplace exposure as little as 5% can be a material contributing causative factor, I make my judgment with a reasonable degree of medical probability."

¶7      In addition to Dr. Lloyd's report, there was a letter from Rothe's counsel to Dr. Lloyd, in which Rothe's counsel provided the following explanation of the causation standard applicable to occupational injury claims:

> As you know, an individual's job duties/work exposure does not have to be the sole cause of the disability; the law makes the claim compensable if the exposure was a "material contributory causative factor in the progression of the disability." Our Commission has further refined the standard indicating that an exposure *as little as 5%* can be a material contributory causative factor.

---

[1] Dr. Lloyd's report consisted of the standard LIRC form WKC-16-B entitled Practitioner's Report on Accident or Industrial Disease In Lieu of Testimony. Dr. Lloyd completed the form and included an attachment consisting of a list of questions and responses to those questions. The issue in this case focuses on the first question listed in the attachment.

4

¶8 The application was set for a hearing on March 21, 2018, before ALJ Nancy Schneiders. At the hearing, the parties presented reports and opinions from Dr. Lloyd and Dr. William Monacci, Conway Freight's expert, regarding Rothe's medical condition, its cause, and its resulting restrictions. Dr. Lloyd was of the opinion that Rothe's employment with Conway Freight was a material contributory cause of Rothe's condition. Dr. Monacci opined that Rothe's condition was due to a degenerative condition from aging and was not work related. The Functional Capacity Evaluation (FCE) that was performed in January 2016 was presented, and Rothe testified.[2]

¶9 Overall, the FCE results indicated that "due to his unsafe blood pressure when lifting 10 [pounds] and inability to tolerate prolonged sitting, [] Rothe would be unable to tolerate even a Sedentary Physical Demand level for an 8 hour day[.]" The FCE provided the following restrictions: "Due to unsafe Blood Pressure: No lifting, pushing, pulling or climbing. Due to lumbar & left/right lower extremity pain: Occasional: standing, walking and sitting with a break for each after 15 [minutes] and overhead reaching; Rare forward bending; Never squatting, balancing, climbing or forward bending."

¶10 The parties additionally presented the opinions of vocational experts—Michelle Albers for Rothe and Leanne Panizich for Conway Freight— regarding the effect of Rothe's medical condition and restrictions on his employability. Relying on Dr. Lloyd's restrictions and considering Rothe's age, education, and training, Albers concluded that "there are no jobs available to

---

[2] The FCE was conducted by Advanced Manual Physical Therapy in order to evaluate how Rothe would be able to meet the physical demands of his job duties.

[] Rothe in the open and competitive labor market on either a full time or part time basis" and "Rothe has suffered a total loss of earning capacity." However, when considering Dr. Monacci's restrictions, Albers concluded that Rothe "has incurred a loss of earning capacity in the range of 70 to 75%." Relying on Dr. Monacci's restrictions, Panizich concluded that Rothe could maintain employment as an Uber or Lyft driver or truck driver and suffered a 50% to 55% loss of earning capacity. Panizich also stated that "Dr. Lloyd's opinion would lead to a vocational determination of permanent and total disability." However, she dismissed many of Dr. Lloyd's restrictions as invalid and dismissed the results of the FCE. Therefore, she reached the conclusion that Rothe would suffer "a 55 to 65% loss of earning capacity" when considering the restrictions provided by Dr. Lloyd.

¶11     In a written decision dated May 8, 2018, ALJ Schneiders found that Rothe suffered an occupational injury entitling him to worker's compensation benefits for a permanent total disability. In so doing, ALJ Schneiders adopted Dr. Lloyd's opinion on causation as the most credible, and found that Rothe's employment at Conway Freight was a "material contributory causative factor" in Rothe's condition, which ultimately required surgery and left Rothe permanently totally disabled. ALJ Schneiders adopted the restrictions set out by Dr. Lloyd, finding that Dr. Lloyd's restrictions were "the most appropriate," and thus, led to the finding that Rothe was permanently totally disabled. ALJ Schneiders described:

> From the medical evidence submitted and my personal observation of [Rothe] at hearing, it is clear that he is very disabled. At hearing, he was unable to maintain one position for any significant length of time. He frequently alternated between sitting and standing. When seated, he shifted around in his chair. He used a cane to walk. As a result of his residual low back and lower extremity symptoms, he takes Percocet and Gaba[p]entin for pain and Trazodone for sleep—all on a daily basis.

6

¶12 Conway Freight sought review of ALJ Schneider's decision, and LIRC affirmed her decision. In so doing, LIRC adopted ALJ Schneider's findings of fact and conclusions of law as its own. Expanding on ALJ Schneider's finding, LIRC stated:

> The commission finds that [Rothe] performed very physically demanding work for the respondent, and performed significant amounts of lifting, twisting, turning, stooping, bending, climbing, and reaching on a daily basis over the course of his 25-year employment with the respondent. The commission credits Dr. Lloyd that [Rothe]'s appreciable period of workplace exposure was at least a material contributory causative factor in the progression of his degenerative lumbar condition that resulted in his need for surgery.

¶13 LIRC also found that Rothe was permanently totally disabled. In so doing, LIRC noted that both vocational experts opined that Rothe was permanently and totally disabled under the restrictions provided by Dr. Lloyd. LIRC also discredited the opinion provided by Panizich in which she suggested that Rothe may not be permanently totally disabled. LIRC stated that Panizich "misstated the FCE when she attributed a significant restriction solely to [Rothe]'s high blood pressure." Rather, LIRC understood that the FCE "found that [Rothe]'s inability to tolerate even sedentary physical demands was based on his unsafe blood pressure when lifting 10 [pounds] *and also his inability to tolerate prolonged sitting*[.]" Thus, LIRC found "that [Rothe]'s inability to tolerate even sedentary physical demands, *which was in part based on his lumbar/lower extremity pain*, was a significant factor in determining that he was permanently totally disabled."

¶14 LIRC also dismissed Panizich's opinion that Rothe could be a driver for Uber or Lyft because "Panizich was not aware of [Rothe]'s testimony regarding the problems he has driving or his computer illiteracy when she

rendered her opinion, and those facts call into question the reliability of her opinion that he could do this work." Thus, LIRC said, "Given these problems with [] Panizich's opinion, the commission does not credit her opinion[.]"

¶15 LIRC ultimately concluded:

> Based on the credible evidence in this case, the commission does not have a legitimate doubt that [Rothe] is permanently totally disabled. [Rothe] is in terrible physical condition and has persistent pain requiring constant pain medication. Given his age and physical condition, the commission finds Dr. Lloyd's restrictions to be reasonable. Given the description of [Rothe]'s daily activities, his instability walking, and constant pain medication, [Rothe] does not appear able to lift 30 pounds on a regular basis, so the commission does not credit Dr. Monacci regarding his restrictions. Both vocational experts opined that [Rothe] is totally disabled under Dr. Lloyd's restrictions. The commission finds that [Rothe] can only perform jobs which are so limited in quality, dependability, and quantity that a reasonably stable market does not exist; therefore, the commission finds [Rothe] is permanently totally disabled.

¶16 Pursuant to WIS. STAT. § 102.23(1) (2019-20),[3] Conway Freight then filed a complaint in the circuit court seeking review of LIRC's decision, and the circuit court affirmed LIRC's decision and denied Conway Freight's petition. Conway Freight now appeals.

## DISCUSSION

¶17 "In an appeal following an administrative agency decision, we review the agency's decision, not the circuit court's." *Beecher v. LIRC*, 2004 WI 88, ¶22, 273 Wis. 2d 136, 682 N.W.2d 29. LIRC's "factual findings are

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

conclusive as long as they are supported by credible and substantial evidence." *Cargill Feed Div./Cargill Malt & AIG Cas. Co. v. LIRC*, 2010 WI App 115, ¶13, 329 Wis. 2d 206, 789 N.W.2d 326; *see also* WIS. STAT. § 102.23(1)(a)1. "Credible and substantial evidence is that which is 'sufficient to exclude speculation or conjecture.'" *Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶48, 349 Wis. 2d 234, 833 N.W.2d 665 (citation omitted). LIRC's "findings regarding the determination, cause, extent and duration of a disability are findings of fact, and are conclusive if supported by credible evidence." *Shelby Mut. Ins. Co. v. DILHR*, 109 Wis. 2d 655, 659, 327 N.W.2d 178 (Ct. App. 1982).

## I. Occupational Injury

¶18 The first issue presented requires us to examine LIRC's finding that Rothe had an occupational injury caused by his employment with Conway Freight. "An occupational disease is 'acquired as the result and an incident of working in an industry over an extended period of time.'" *Id.* at 661 (citation omitted). In order for an occupational disease to exist, the occupation must be a "material contributory factor" in causing the disease. *See Wisconsin Ins. Sec. Fund v. LIRC*, 2005 WI App 242, ¶21, 288 Wis. 2d 206, 707 N.W.2d 293.

¶19 Conway Freight takes issue with LIRC's finding that Rothe's employment at Conway Freight was a material contributory factor in Rothe's degenerative disc condition and need for surgery because, as Conway Freight contends, LIRC changed the relevant causation standard without the authority to do so. In making this argument, Conway Freight relies on the portion of Dr. Lloyd's report in which Dr. Lloyd explained his opinion saying: "Knowing that the standard indicating a workplace exposure as little as 5% can be a material contributing causative factor, I make my judgment with a reasonable degree of

medical probability." Conway Freight argues that Dr. Lloyd's opinion "falls short of this legal standard because a 5% contribution cannot be considered" a material contributory factor, and as a result, LIRC was wrong to rely on Dr. Lloyd's opinion regarding causation.

¶20 We are not persuaded that LIRC changed the causation standard for an occupational injury. In his report, Dr. Lloyd never attributes any percentage of cause to Rothe's employment at Conway Freight, and as such, Dr. Lloyd never concluded that Rothe's workplace exposure constituted only a 5% contributory factor to Rothe's back condition, as Conway Freight would have this court believe. Moreover, we review LIRC's finding on the matter, not Dr. Lloyd's, and after considering the nature of Rothe's employment at Conway Freight, his medical history, and medical opinions on the subject, LIRC found that Rothe's employment at Conway Freight was "at least a material contributing causative factor in the progression of [Rothe's] degenerative lumbar condition that results in his need for surgery." This is the proper standard, and LIRC's finding regarding cause is supported by credible evidence in the record.

¶21 We also will not substitute our judgment for that of LIRC's in finding Dr. Lloyd's report on causation credible and in rejecting Dr. Monacci's report. *See* WIS. STAT. § 102.23(6); *see also **Wisconsin Ins. Sec. Fund***, 288 Wis. 2d 206, ¶24 ("We do not reweigh the credibility of such evidence."). "The credibility of the doctors' opinions is a matter entrusted to LIRC[.]" *See **Xcel Energy Servs.***, 349 Wis. 2d 234, ¶52. Thus, we reject Conway Freight's argument on this issue, and we conclude that LIRC's finding that Rothe suffered an occupational injury caused by his employment at Conway Freight is supported by credible and substantial evidence.

## II.    Permanent Total Disability

¶22    The second issue presented requires us to examine LIRC's finding that Rothe was permanently totally disabled.    An injured worker is entitled to permanent total disability benefits when the injury results in "a total loss of earning capacity." ***Cargill Feed Div.***, 329 Wis. 2d 206, ¶18.

¶23    In Rothe's case, LIRC applied the "judge-made adjunct" applicable to certain claims of permanent total disability called the "odd-lot" doctrine, *see **id.***, ¶19, and found that Rothe "established a prima facie case for permanent total disability."    LIRC explained its finding stating:

> Considering the factors in Wis. Admin. Code § DWD 80.34(1), [Rothe] has shown that, given his age, education, training, previous work experience, and likelihood of future suitable occupational change, he has sustained a loss of his earning capacity.    He sustained a significant occupational low back injury that required surgery.    That surgery was not successful, and he is now on daily pain medication that makes him drowsy, walks with a cane, and has significant physical restrictions.    His vocational expert has opined that [Rothe] is permanently totally disabled.    Under all of [Rothe's] restrictions adopted by Dr. Lloyd (and taking the FCE restrictions at face value, as noted by [] Panizich), both vocational experts opined that he was permanently totally disabled.

We agree and conclude that LIRC properly found that Rothe was permanently totally disabled under the "odd-lot" doctrine.

¶24    In ***Beecher***, 273 Wis. 2d 136, ¶2, our supreme court explained:

> The odd-lot doctrine is a judge-made adjunct to the law of worker's compensation.  It represents a modification of the general rule that benefits for permanent total disability compensate an injured worker for loss of earning capacity.    Whereas most recipients of permanent total disability benefits have lost all capacity to earn income, claimants under the odd-lot doctrine may qualify for benefits even though they retain a small, residual capacity

11

> to earn income. In essence, the odd-lot doctrine provides that some injured workers should be characterized as permanently, totally disabled even though they are still capable of earning occasional income.

(Footnote omitted.) The court further stated:

> [W]here a claimant makes a prima facie case that he has been injured in an industrial accident and, because of his injury, age, education, and capacity, he is unable to secure any continuing and gainful employment, the burden of showing that the claimant is in fact employable and that jobs do exist for the injured claimant shifts to the employer.

*Id.*, ¶3 (emphasis omitted; citation omitted). "Whether a litigant has established a prima facie case is a question of law." *Id.*, ¶22.

¶25    Conway Freight argues LIRC's finding that Rothe was permanently totally disabled improperly held Conway Freight responsible for Rothe's inability to work as a result of Rothe's high blood pressure. In support, Conway Freight relies on the FCE and argues that it was Rothe's high blood pressure, not Rothe's back condition, that necessitated Rothe's lifting restrictions assigned in the FCE because the FCE evaluation had to be stopped when Rothe's blood pressure went dangerously high when he tried to lift a ten-pound object. Conway Freight also argues that Rothe did not suffer from high blood pressure until after his final day of employment at Conway Freight, and thus, it is not a condition for which it should be held responsible.

¶26    First, we note that Conway Freight does not even mention, let alone attempt to refute, LIRC's argument that Rothe established a prima facie case for permanent total disability under the odd-lot doctrine. Rather, it merely asserts that LIRC improperly held Conway Freight responsible for Rothe's inability to work as a result of his high blood pressure. However, as noted above, under the odd-lot

doctrine, we take Rothe as he is and assess his earning capacity based on the factors set forth under the doctrine. *See* ***Travelers Ins. Co. v. DILHR***, 85 Wis. 2d 776, 781, 271 N.W.2d 152 (Ct. App. 1978). In fact, when previously confronted with "a middle-aged manual laborer" with "disabling silicosis," we assessed the individual, including non-work related conditions, and concluded:

> The department was entitled to conclude that, in the absence of a showing to the contrary, a middle-aged manual laborer of limited education whose primary asset is a body afflicted with disabling silicosis and who also suffers from alcoholism, chronic bronchitis and hypertension, is unlikely to find regular and continuous employment.

*Id.* Thus, we conclude that, under the odd-lot doctrine, Rothe must be taken as he is when considering his overall ability to find regular and continuous employment after having sustained an occupational injury.

¶27 Here, Rothe was born in 1957, has no education beyond a G.E.D., and has been trained and worked as a truck driver and dock worker for decades. The record also firmly establishes that Rothe suffered a debilitating back condition that has imposed significant restrictions on his ability to sit, stand, bend, stoop, and perform various other activities, which are required for the work that he has been trained to perform, and these restrictions played a significant role in LIRC's finding that Rothe was permanently totally disabled. However, as LIRC also recognized, Rothe's medical records indicate that Rothe has encountered issues with high blood pressure (also referred to in his medical records as hypertension) "since at least August 18, 2000." Thus, while Rothe's back condition played the primary role in determining that Rothe was permanently totally disabled, Rothe's high blood pressure was a part of his condition prior to his last day of employment

with Conway Freight, even if Rothe was not on medications for his blood pressure at that time.

¶28    Furthermore, while Rothe may have been able to perform intermittent tasks for which he could secure temporary and intermittent employment, "utter and abject helplessness" is not required for a finding of permanent total disability under the odd-lot doctrine. *See Balczewski v. DILHR*, 76 Wis. 2d 487, 493, 251 N.W.2d 794 (1977) (citation omitted).  Therefore, as was the case in *Travelers*, LIRC was similarly entitled to find that given Rothe's age, limited education, limited training and experience in one area of employment, and physical condition, it is unlikely that Rothe will secure any other continuing and gainful employment.  Accordingly, we conclude that LIRC appropriately considered Rothe's situation and physical condition as he is, and there is substantial and credible evidence in the record to support LIRC's finding that Rothe was permanently totally disabled under the odd-lot doctrine.[4]

¶29    Moreover, as noted above, Conway Freight failed to address the odd-lot doctrine in its briefing, and we, therefore, conclude that Conway Freight conceded that Rothe established a prima facie case for permanent total disability under the odd-lot doctrine. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failing to refute a proposition asserted in a response brief may be taken as a concession).  Nevertheless, although Conway Freight failed to mention, let alone address, the odd-lot doctrine, Rothe's

---

[4] We conclude that the odd-lot doctrine is dispositive on the matter of Rothe's permanent total disability.  Therefore, we decline to address Conway Freight's argument under *Flug v. LIRC*, 2017 WI 72, 376 Wis. 2d 571, 898 N.W.2d 91, and its argument that its due process rights were violated.  *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

prima facie case, and the fact that under the doctrine the burden shifted to Conway Freight to show that Rothe was employable and there are jobs available to him in its briefing, Conway Freight did introduce some evidence that can be interpreted as applying to its own burden under the odd-lot doctrine. Thus, we address the evidence introduced by Conway Freight in this regard. However, as explained below, we conclude that Conway Freight failed to meet this burden.

¶30 Once Rothe established a prima facie case for permanent total disability under the odd-lot doctrine, the burden shifted to Conway Freight to show employability and the availability of jobs—in other words, it was up to Conway Freight under these circumstances to demonstrate that Rothe is actually employable and that there are actual jobs available to him. *See Beecher*, 273 Wis. 2d 136, ¶3.

¶31 The only evidence that Conway Freight introduced relating to Rothe's employability was the report of its vocational expert Panizich. In its decision, LIRC addressed Panizich's opinion regarding Rothe's employability. LIRC stated that:

> Panizich opined that [Rothe]'s skills would allow him to continue working, for instance, driving for car services such as Uber and Lyft, in which case he could be expected to earn about one-half his annual salary.… Under Dr. Monacci's restrictions (restriction of lifting 30 pounds at waist level), [] Panizich opined that [Rothe] could pursue alternative truck driving positions, including sedentary to light categories.

However, LIRC found that her opinions were not credible. It stated:

> However, that is not credible since [Rothe] has limitations in his leg and foot for driving and cannot lift 10 pounds. If he cannot sit for more than 30 minutes without excruciating pain, he would not be able to drive to pick someone up, wait for them, drive them to their destination, and then

15

> drive home safely. [Rothe] also testified that he was "computer illiterate" and his "wife does the computers," so it is not likely that he would be able to navigate the digital platform for either company.

(Footnote omitted.)

¶32 LIRC then noted that Panizich was not aware of Rothe's testimony regarding the problems he has driving or his computer illiteracy when she rendered her opinion, and those facts call into question the reliability of her opinion that he could do this work. It then stated that "[g]iven these problems with [] Panizich's opinion, the commission does not credit her opinion." LIRC then found that Conway Freight had not met its burden to rebut Rothe's prima facie case by showing that there are actual jobs available to Rothe.

¶33 Accordingly, we conclude that LIRC appropriately considered Rothe's situation and physical condition as he is, and there is substantial and credible evidence in the record to support LIRC's finding that Rothe was not employable and there were no actual jobs available to him under the odd-lot doctrine, and thus, he is permanently totally disabled under the odd-lot doctrine.

### III. Dr. Lloyd's Report

¶34 Conway Freight last argues that Dr. Lloyd's restrictions are speculative and without foundation. In making this argument, Conway Freight points to the fact that Dr. Lloyd included a prediction that Rothe would miss work as a result of his back condition and contends that these are not medical restrictions because it is neither a physical nor a mental limitation resulting from Rothe's back condition. Conway Freight also takes issue with the fact that Dr. Lloyd changed the restrictions without evaluating Rothe and without considering Rothe's self-reports of his condition.

¶35   We reject Conway Freight's attempt to discredit Dr. Lloyd's opinion as a means of overturning LIRC's decision.  Dr. Lloyd, having served as Rothe's neurosurgeon since 2014, had evaluated Rothe on several occasions and knew Rothe's condition well.  Thus, Conway Freight's argument that Dr. Lloyd did not evaluate Rothe before imposing final restrictions is not persuasive.

¶36   Moreover, Dr. Lloyd's final restrictions are consistent with those listed in the FCE, and consequently are confirmed by the record.  In the FCE, as a result of his back condition, Rothe was restricted to "[o]cassional:  standing, walking and sitting with a break for each after 15 [minutes] and overhead reaching; [r]are forward bending; [n]ever squatting, balancing, climbing or forward bending" and, as a result of his blood pressure, he was restricted to "[n]o lifting, no pushing, pulling or climbing."  Dr. Lloyd then adopted these restrictions from the FCE and added that Rothe was limited to "working 4 hours per day/5 days per week, with no overtime; standing 30 minutes/hour; walking 30 minutes/hour up to 100 meters; sitting 30 minutes/hour; and driving 30 minutes/hour."  Dr. Lloyd also "estimated that [Rothe]'s condition would require 3 or more scheduled breaks per day, that [Rothe]'s condition would require him to miss work 2 to 3 times/month, and that up to 33% of the time [Rothe]'s pain would be severe enough to interfere with attention and concentration."

¶37   Conway Freight's argument that Dr. Lloyd's restrictions are speculative and lack foundation is also premised on Panizich's criticism of the validity of Dr. Lloyd's restrictions.  However, LIRC thoroughly discredited Panizich's opinion, and we will not substitute our judgment as to the credibility of the evidence.  *See* WIS. STAT. § 102.23(6).  "The credibility of the doctors' opinions is a matter entrusted to LIRC," *Xcel Energy Servs.*, 349 Wis. 2d 234, ¶52, and LIRC clearly chose to credit Dr. Lloyd's opinion in the face of Panizich's

criticism. Thus, given Dr. Lloyd's familiarity with Rothe's condition and reliance on and consistency with the FCE, we reject Conway Freight's attempt to reverse LIRC's decision because Dr. Lloyd's report is, as Conway Freight contends, speculative and without foundation.

¶38 Furthermore, even setting aside the restrictions with which Conway Freight takes issue, the remaining restrictions contained in Dr. Lloyd's report are sufficient to sustain a finding under the odd-lot doctrine that Rothe is unable to find continuing and gainful employment, and demonstrate that Rothe was not able to tolerate sedentary work. As LIRC found, and as supported by an abundance of evidence in the record, it was Rothe's "inability to tolerate even sedentary physical demands, *which was in part based on his lumbar/lower extremity pain*, was a significant factor in determining that he was permanently totally disabled." Thus, we reject Conway Freight's attempt to discredit Dr. Lloyd's opinion as a means of overturning LIRC's decision as unsupported by credible and substantial evidence.

## CONCLUSION

¶39 In sum, we conclude that LIRC's finding that Rothe sustained an occupational injury as a result of his employment at Conway Freight is supported by substantial and credible evidence in the record and such finding was not made using an incorrect causation standard. We also conclude that LIRC appropriately found that Rothe was permanently totally disabled under the odd-lot doctrine and this finding is supported by substantial and credible evidence in the record. Further, we conclude that Conway Freight has failed to discredit Dr. Lloyd's restrictions, and thus, we reject Conway Freight's attempt to overturn LIRC's decision as unsupported by credible and substantial evidence.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.