CARGILL FEED DIVISION/CARGILL MALT and AIG Casualty Company, Plaintiffs-Appellants,

v.

LABOR AND INDUSTRY REVIEW COMMISSION and Charles Renz, Defendants-Respondents.

Court of Appeals

*No. 2009AP1877. Submitted on briefs February 5, 2010. —Decided July 29, 2010.*

2010 WI App 115

(Also reported in 789 N.W.2d 326.)

Before Dykman, P.J., Lundsten and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. This case involves a worker's compensation claim, and the Labor and Industry Review Commission's determination that the injured worker, Charles Renz, a former employee of Cargill Feed Division/Cargill Malt, is permanently and totally disabled under the so-called "odd-lot" doctrine. "The odd-lot doctrine is a judge-made adjunct to the law of worker's compensation." *Beecher v. LIRC*, 2004 WI 88, ¶ 2, 273 Wis. 2d 136, 682 N.W.2d 29. Under the odd-lot doctrine, injured workers may be classified permanently and totally disabled even if they retain a small, residual capacity to earn income; if they are "fit

212

only for the 'odd lot' job that appears occasionally and for a short time." *Id.*, ¶¶ 2, 31. The doctrine operates as a rule of evidence:

> [W]here a claimant makes a prima facie case that he [or she] has been injured in an industrial accident and, because of his [or her] injury, age, education and capacity, he [or she] is unable to secure any continuing and gainful employment, the burden of showing that the claimant is in fact employable and that jobs do exist for the injured claimant shifts to the employer.

*Balczewski v. DILHR*, 76 Wis. 2d 487, 495, 251 N.W.2d 794 (1977).

¶ 2. Cargill and its workers compensation carrier AIG Casualty Company ("Cargill") challenge the Commission's finding that Cargill failed to rebut Renz's prima facie odd-lot case. Specifically, Cargill argues that the Commission erred by concluding that Cargill failed to rebut Renz's prima facie odd-lot case of permanent and total disability because (1) Cargill did not inform specific prospective employers of Renz's age and disability limitations, and other pertinent employability information, and because, (2) contrary to the Commission's preference, Cargill did not refer Renz to employers with specific job openings that were actually available to Renz.[1]

¶ 3. Applying de novo review to the Commission's interpretation of the judge-made odd-lot doctrine, we

---

[1] Cargill also argues that certain findings of the Commission, including its findings that Cargill failed to rebut Renz's prima face case of odd-lot permanent and total disability and that Renz conducted an actual and futile job search or presented expert evidence that defeated Cargill's attempted rebuttal, were not supported by substantial evidence. Because we reverse the Commission's decision on other grounds, we do not address these arguments. *See Stoughton Trailers, Inc. v. LIRC,*

conclude that the Commission erred by applying the wrong legal standard in determining whether Cargill had rebutted Renz's prima facie odd-lot case. Specifically, we conclude that the Commission expanded the evidentiary burden on employers seeking to rebut a claimant's prima facie odd-lot case beyond that established in *Beecher* and *Balczewski* by: (1) requiring the employer to produce evidence it disclosed to prospective employers a claimant's age, disability, and other facts about the claimant; and by (2) establishing a preference for evidence that the employer referred the claimant to prospective employers with specific job openings actually available. We therefore reverse the circuit court's decision affirming the Commission's decision. We set aside the Commission's decision, and remand for the Commission to determine whether Cargill has rebutted Renz's prima facie case based on the evidence of record and in accordance with the standards set forth in *Beecher* and *Balczewski*, and for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 4. The following facts are taken from the findings of the Commission and the administrative law judge, and from the record. Renz injured his lower back in November 2002, and May 2005, while working as a laborer at Cargill. Renz underwent surgery following his second injury, and, after a period of months, was cleared to return to work. However, in late 2005, Renz was terminated at approximately the same time Cargill

2005 WI 105, ¶ 40, 303 Wis. 2d 514, 735 N.W.2d 477 (cases should be decided on the narrowest possible grounds).

reduced its workforce.[2] At the time, Renz was sixty-one years old and had worked as a union laborer with Cargill for thirty-six years.

¶ 5. Renz filed an application for permanent total disability benefits in June 2007. Following a hearing, an administrative law judge (ALJ) issued a decision finding Renz to be permanently and totally disabled. The ALJ considered two sets of work restrictions based on evaluations of Renz's physical capacities, one by Renz's treating physician, Dr. Paul Anderson, the other by a physician hired by Cargill, Dr. William Monacci. Dr. Anderson issued the following restrictions: no more than two hours of standing, walking, sitting or driving; lifting no more than ten pounds (sedentary work); only occasional reaching above the shoulders; no bending, squatting, or climbing; and a work day of between four and six hours. Dr. Monacci restricted Renz to: occasional lifting of no more than twenty pounds to waist level; intermittent bending or stooping; and work that would permit him to change position hourly.

¶ 6. The ALJ considered the opinions of the parties' vocational experts regarding Renz's loss of earning capacity. The ALJ described the opinion of Renz's expert, who determined that Renz was permanently and totally disabled:

> (1) The applicant's expert concluded, "it is possible that a job could be identified that would [meet the Anderson restrictions], but the number of jobs in the labor market would be very limited. When such part-time openings would occur, it is likely that younger

---

[2] On appeal, Cargill does not dispute the Commission's determination that, but for Renz's injury, Cargill would have kept Renz after the workforce reduction, given his seniority in the union.

candidates would be hired and [the applicant] would be passed over due to his age and his various physical limitations. Therefore, . . . the services the applicant has to offer employers are so limited in quality, dependability, and quantity that a reasonably stable labor market . . . does not exist." The expert found [Renz] was permanently totally disabled.

The expert further concluded, "when [the applicant] searches for light-level work [within the Monacci restrictions] he could consider only select job openings [and] he could neither work at jobs with prolonged sitting nor jobs with prolonged weight-bearing. Only certain kinds of light-level jobs would be appropriate for him . . ." The expert found that would constitute only odd-lot employment, also making him permanently totally disabled.

¶ 7. The ALJ next summarized the opinion of Cargill's expert, Barbara Lemke:

(2) The respondents' expert initially admitted no knowledge of the reason for the applicant's termination, applied a displaced-worker analysis, and identified the material question as: "[What] could [the applicant] have expected to earn as an uninjured worker in the general labor market[?]"[3] Given this and his longevity at the respondent, she asserted his wage there was greatly inflated when compared to that of others in the general labor market for comparable work. A loss of earning capacity resulted (30 to 65 percent based upon

[3] Lemke used a "displaced-worker analysis" to calculate Renz's earning potential based on the assumption that Renz would have been terminated in the October 2005 workforce reduction. As noted, the Commission found that Renz would have been among those workers who would have been eligible to stay at Cargill by reason of his years of service with the union.

216

both sets of restrictions), but less than that had the proper traditional worker's compensation analysis been applied.

The expert then testified and provided an analysis of the applicant's loss of earning capacity without consideration of the displaced-worker theory. She found purported, available jobs within a relevant labor market but with greater losses (45 to 85 percent) based upon both the Anderson and Monacci restrictions; but, none of the positions appeared to offer him the select work required by them.

The ALJ then noted that Lemke did not inform the prospective employers of Renz's age and disability when conducting the market survey:

Indeed, none of the named potential employers were told of his age, experience, or restrictions; and, she credibly testified although he could compete for the jobs, it would be harder at his age and with restrictions to be hired over a healthier, younger person.

¶ 8. The ALJ found credible the conclusion of Renz's vocational expert that Renz was permanently and totally disabled, and ordered Cargill to pay Renz's treatment expenses, a monthly benefit of $1,711.14 for life, and Renz's attorney fees and costs.

¶ 9. Cargill appealed the ALJ's decision to the Labor and Industry Review Commission. The Commission modified the ALJ's findings of fact and conclusions of law, and, as modified, adopted the ALJ's decision as its own. In modifying the ALJ's decision, the Commission deleted a paragraph of the ALJ's decision (not discussed here) and substituted the following language, applying the burden-shifting analysis for "odd-lot" permanent and total disability cases set forth in *Balcz ewski* and *Beecher* to the facts of Renz's case:

217

Based on the applicant's credible testimony, and Dr. Anderson's credible medical opinion, Dr. Anderson's physical restrictions are accepted as credible. Given those restrictions as well as the applicant's age (birth date January 19, 1944), education (tenth grade with a subsequent G.E.D.), and capacity (six years as a shipping clerk, two years as a spot welder, and 36 years as a laborer for the employer), the applicant's vocational expert's (Timothy G. Greenya) opinion of permanent total disability constitutes a *prima facie* case for "odd lot" unemployability. The employer was required to rebut this *prima facie* case of permanent total disability by demonstrating that the applicant " . . .is actually employable and that there are actual jobs available to him . . .making it more probable than not that the claimant is able to earn a living."

Respondents' vocational expert's (Barbara K. Lemke) job listings, compiled through computer search and telephone contact by Lemke and her colleague, do not satisfy the substantial burden for rebuttal of the *prima facie* case articulated in *Beecher.* The job listings Lemke compiled universally fail to include a full description, or in most cases any description, of the specific physical requirements of the job. Dr. Anderson's restrictions are severe and include a maximum of two hours sitting or two hours standing in one day, and a maximum of six hours of sedentary work in one day, which eliminates all the proposed full-time positions Lemke listed. The commission infers that Dr. Anderson's sedentary sitting and standing restrictions also make it more probable than not that the applicant would not be hired for almost any part-time job, and that if he were hired, the work would be casual and intermittent, rather than "regularly and continuously available" to him. (Footnote omitted.)

¶ 10. Additionally, the Commission issued a memorandum opinion, which defended the ALJ's criticism of vocational expert Lemke's failure to disclose

Renz's age and disability to prospective employers:

Respondents objected to the administrative law judge's reference to the fact that none of the employers cited by Barbara Lemke or her colleague were informed of the applicant's age, experience, or physical restrictions. Respondents asserted that federal and state anti-discrimination laws preclude employers from considering age and disability when making hiring decisions, unless the nature of the job is such that these considerations are legitimate. The reality is that anti-discrimination laws have been established because there is an inclination for many employers to discriminate against older or disabled individuals. While state and federal laws do address this problem, they do not eliminate it. The factors of age and physical restriction have always been considered relevant in the permanent total disability analysis, whether one looks to the case law or to Wis. Admin. Code ch. DWD 80.34.

While the commission recognizes the difficulty employers face in rebutting the *prima facie* case for permanent total disability, the commission must follow the law articulated in *Beecher*, which requires a showing of an actual job or jobs available to the injured worker. At a minimum, this requires the prospective employers to know all the relevant facts concerning the injured worker, and preferably that the injured worker have been referred to employers with specific job openings actually available to the worker.

¶ 11. The memorandum opinion also addressed the adequacy of Renz's job search:

Finally, respondents argue that the applicant had withdrawn from the labor market, and therefore should not be eligible for permanent total disability. As noted by the administrative law judge, the applicant did make a substantial and genuine job search with no success after the employer discharged him. *Beecher* makes it

219

clear that a job search is not a factor to be considered in the establishment of a *prima facie* case for permanent total disability. *Beecher v. LIRC*, 2004 WI 88, ¶ 44. The court further stated that the *prima facie* case is rebutted only by " . . . bringing forward evidence of actual job availability, making it more probable than not: that the claimant is able to earn a living." *Beecher v. LIRC*, 2004 WI 88, ¶ 55. The court further explained that: "The claimant may respond with evidence of an actual, futile job search or rely on his expert evidence to defeat the employer's attempted rebuttal." *Id.* The applicant credibly accomplished both of these defenses to respondents' attempted rebuttal of the *prima facie* case. He credibly established that regardless of a job search, and considering the relevant factors and his vocational expert's opinion, the effects of his work-related injury have placed him in the "odd lot" category and made him permanently and totally disabled.

¶ 12. Cargill sought certiorari review of the Commission's decision before the circuit court. Applying great weight deference to the Commission's interpretation and application of the odd-lot doctrine, the circuit court affirmed.

## · STANDARD OF REVIEW

¶ 13. We review the Commission's decision on appeal, rather than the circuit court's decision. *Mervosh v. LIRC*, 2010 WI App 36, ¶ 7, 324 Wis. 2d 134, 781 N.W.2d 236. This case requires us to review the Commission's determination that Cargill failed to rebut Renz's prima facie case of odd-lot permanent and total disability. Whether the evidence produced by the employer in an odd-lot case is sufficient to rebut the injured worker's prima facie showing is a question of fact. *See Beecher*, 273 Wis. 2d 136, ¶ 55 (employer's

burden to rebut a prima facie odd-lot case is a burden of persuasion).[4] The Commission's factual findings are conclusive as long as they are supported by credible and substantial evidence. *See Eaton Corp. v. LIRC*, 122 Wis. 2d 704, 708, 364 N.W.2d 172 (Ct. App. 1985).

¶ 14. The primary issues on appeal are whether, to rebut an injured worker's prima facie case of odd-lot permanent and total disability, an employer must produce evidence that it: (1) informed prospective employers of the injured worker's disability, age and other factors relevant to his or her employability; and (2) referred the worker to employers with actual jobs available to him or her. These issues involve the Commission's interpretation of the odd-lot doctrine, a question of law. *See Beecher*, 273 Wis. 2d 136, ¶ 22.

¶ 15. An agency's interpretation and application of a legal standard may be entitled to deference on review. *See Virginia Sur. Co., Inc. v. LIRC*, 2002 WI App 277, ¶ 11, 258 Wis. 2d 665, 654 N.W.2d 306. Courts reviewing an appeal of an agency decision apply either great weight deference, due weight deference or no deference (de novo review) to an agency's legal conclusions. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284–87, 548 N.W.2d 57 (1996). In this case, the parties dispute the appropriate standard of review to apply to the Commission's interpretation of the odd-lot doctrine.

¶ 16. The Commission contends that its interpretation and application of the odd-lot doctrine is entitled to great weight deference because DWD and the Com-

---

[4] No case directly states that the sufficiency of an employer's rebuttal is a question of fact. Both parties take this view, however. We therefore apply the standard of review applicable to an agency's factual findings without directly addressing the issue.

221

mission are charged with administration of the Worker's Compensation Act, the Commission's interpretation is one of long-standing, the Commission employed its expertise or specialized knowledge in forming the interpretation and because the Commission's interpretation will provide uniformity and consistency in the application of worker's compensation law. *See UFE*, 201 Wis. 2d at 287. The Commission argues that, even if its interpretation is not entitled to great weight deference because the Commission has never applied the doctrine to a fact situation similar to the present case, due weight deference is appropriate based on the Commission's prior experience interpreting the Act and the odd-lot doctrine.

¶ 17. Cargill contends that the Commission's interpretation and application of the odd-lot doctrine is entitled to no deference because the odd-lot doctrine is a common law adjunct to worker's compensation law, and no deference is owed to agency interpretations of judge-made law. We agree with Cargill. In *Beecher*, the supreme court applied de novo review to a Commission interpretation of the odd-lot doctrine. The court conducted an independent review on grounds that the Commission's decision rested on an interpretation of a judge-made doctrine, not an interpretation of a statute or an administrative rule. *Beecher*, 273 Wis. 2d 136, ¶ 26. The supreme court explained that it "need not defer to agency interpretations of [its] own decisions."[5] *Id.* Likewise, we owe no deference to agency interpre-

---

[5] *But see Beecher v. LIRC*, 2004 WI 88, ¶ 79, 273 Wis. 2d 136, 682 N.W.2d 29 (Abrahamson, C.J., concurring) (expressing minority view of the court that LIRC's determination is entitled to great weight deference concerning the odd-lot doctrine because (1) the agency is charged with administering the

tations of law created by the appellate courts of this state. Accordingly, we apply de novo review to the Commission's interpretation of the odd-lot doctrine.

## DISCUSSION

### *The Odd-Lot Doctrine*

■

¶ 18. The Worker's Compensation Act (the Act), Chapter 102 of the Wisconsin Statutes, is the primary source of worker's compensation law in Wisconsin, and is administered by the DWD. *Beecher*, 273 Wis. 2d 136, ¶ 27. Benefits under the Act fall into two categories, temporary and permanent. *Id.* Permanent benefits are payable for disabilities that remain after the healing period has ended. *Id.* There are two categories of permanent benefits: Benefits for "scheduled" injuries, and benefits for "unscheduled" injuries. *Id.*, ¶ 28. "Scheduled" injury benefits are determined by application of the schedule set forth in WIS. STAT. § 102.52. Benefits for unscheduled injuries are determined using a more individualized approach. *Id.* Renz's back injury is an unscheduled injury. In assessing the extent of lost earning capacity in all cases of both partial and total permanent disability caused by unscheduled injuries, DWD must take into account certain factors, including the injured worker's age, education, training, previous work experience, previous earnings, and efforts to find suitable employment, among others. WIS. ADMIN. CODE § DWD 80.34(1). An injured worker is entitled to per-

---

particular statute at issue; (2) its interpretation is one of long-standing; (3) it employed its expertise or specialized knowledge in interpreting the statute; and (4) its interpretation will provide uniformity and consistency in the application of the statute at issue).

manent total disability benefits when an unscheduled injury results in a total loss of earning capacity. *Beecher*, 273 Wis. 2d 136, ¶ 29.

¶ 19. The odd-lot doctrine is a judge-made adjunct to the Act adopted by the supreme court in *Balczewski* applicable to certain claims of permanent and total disability. *See Beecher*, 273 Wis. 2d 136, ¶ 31. The doctrine recognizes "that total disability . . . should not be taken literally to mean complete and utter helplessness, because some injured workers find themselves, because of their age, education, training, and overall capacity, 'incapable of becoming [] ordinary work[ers] of average capacity in any well known branch of the labour market.' " *Id.* (*quoting Cardiff Corp. v. Hall*, 1 K.B. 1009, 1020 (1911)).

¶ 20. The odd-lot doctrine also functions as a rule of evidence. An injured claimant asserting permanent and total disability on an odd-lot basis must make a prima facie case of permanent and total disability. *Balczewski*, 76 Wis. 2d at 495. The claimant may do so by producing certain basic facts—such as his or her injury, age, education, capacity, and training—which constitute prima facie evidence of a presumed fact: that the injured claimant is permanently and totally incapable of earning a living. *Beecher*, 273 Wis. 2d 136, ¶ 54.

¶ 21. Once the claimant establishes a prima facie case, the presumption that the claimant is permanently and totally disabled is triggered, and the burden shifts to the employer to prove "that it is more probable that the claimant is *not* permanently and totally incapable of

earning a living." *Id.* To meet its burden, the employer must "show that there exists suitable employment for the claimant. The employer does this by bringing forward evidence of actual job availability, making it more probable than not that the claimant is able to earn a living." *Id.*, ¶ 55.

¶ 22. If the employer proves the existence of suitable employment, the claimant may respond by showing his or her job search was actual and futile, or by presenting expert evidence to defeat the employer's attempted rebuttal. *Id.*

> The factors enumerated in [Wis. Admin. Code ] DWD § 80.34 may come into play in the agency's ultimate determination of eligibility for benefits, to the extent that they overlap with the odd-lot doctrine, or in a broader sense to the extent that the odd-lot case fails and traditional eligibility rules prevail.

*Beecher*, 273 Wis. 2d 136, ¶ 55

### *Whether the Commission's Decision Expands the Employer's Odd-Lot Burden*

¶ 23. On appeal, Cargill does not dispute that Renz made a prima facie case of odd-lot permanent and total disability. Rather, Cargill challenges the Commission's determination that it failed to rebut Renz's prima facie odd-lot case. As noted, the ALJ's decision suggested that Cargill's vocational expert, Barbara Lemke, should have shown that she informed prospective employers of Renz's age and disability to ascertain the availability of suitable, available employment. The Commission's memorandum decision embraced this view, holding that "the law articulated in *Beecher*," specifically its requirement that the employer

show the availability of actual jobs, requires, "[a]t a minimum, . . . [that] the prospective employers . . . know all the relevant facts concerning the injured worker, and preferably that the injured worker have been referred to employers with specific job openings actually available to the worker." Based on our reading of the Commission's decision, these "relevant facts" included that Renz was sixty-two years old and had a disability that limited his vocational abilities.

¶ 24. Cargill contends the Commission's decision expands the employer's burden under *Balczewski* necessary to rebut a claimant's prima facie odd-lot case by requiring an employer to produce evidence that it had disclosed the age and disability of a claimant to prospective employers. Cargill argues that the Commission's decision must be reversed because it effectively requires employers challenging a prima facie odd-lot case to disclose information that a potential employer may not lawfully inquire into or consider in deciding whether to hire a qualified applicant. Further, Cargill argues the Commission's decision expands the employer's burden on rebuttal in an odd-lot case by requiring an employer to produce evidence that it referred the injured worker to prospective employers with job openings actually available to him or her.

¶ 25. In response, the Commission argues that language in its decision that the employer "know all the relevant facts concerning the injured worker" is based on a reasonable reading of *Balczewski*'s requirement that the employer show that "actual" jobs exist for the worker. This reading of *Balczewski*, argues the Commission, his consistent with the well-established principle that the Act is to be liberally construed to effectuate the remedial purposes of the Act. *See County of Dane v. LIRC*, 2009 WI 9, ¶ 33, 315 Wis. 2d 293, 759

226

N.W.2d 571. Further, the Commission argues that requiring an employer's vocational expert to disclose the injured worker's age and disability to prospective employers in a labor market survey would not be contrary to relevant provisions of the Wisconsin Fair Employment Act, the federal Age Discrimination in Employment Act or the Americans with Disabilities Act.[6]

¶ 26. Before addressing the parties' arguments, we turn to *Balczewski* and *Beecher* to ascertain what an employer must prove to rebut a claimant's prima facie odd-lot case of permanent and total disability. We will then apply the standards provided in these cases to the Commission's decision to determine whether the Commission's decision was consistent with these standards.

¶ 27. In *Balczewski*, the supreme court described the employer's odd-lot burden as one of "showing that the claimant is in fact employable and that jobs do exist for the injured claimant." *Balczewski*, 76 Wis. 2d at 495. *Balczewski* further states that the employer's burden is

> to show that some kind of suitable work is regularly and continuously available to the claimant. Certainly in [an odd-lot] case it should not be enough to show that claimant is physically capable of performing light work, and then round out the case for noncompensability by adding a presumption that light work is available.

[6] We express no view about whether informing a prospective employer of an injured worker's age or disability would be contrary to provisions of these anti-discrimination laws. As explained later, we set aside the Commission's decision because the imposition of such a requirement expands the employer's burden in an odd-lot case beyond that set forth in *Balczewski* and *Beecher*, not necessarily because such a requirement might violate anti-discrimination laws.

*Id.* (*quoting* Arthur Larson, 2 WORKMEN'S COMPENSATION LAW, sec. 57.61 pp. 10–136–37).

¶ 28. In *Beecher*, the supreme court explained that, once a claimant has established that a prima facie odd-lot case has been made, the burden falls to the employer "of proving that the non-existence of the presumed fact is more probable than its existence, or in other words, that it is more probable [than not] that the claimant is *not* permanently and totally incapable of earning a living." Stated differently, an employer must show "that there is an actual job [available] that the claimant can do." *Beecher*, 273 Wis. 2d 136, ¶ 54. The supreme court in *Beecher* suggested that proof of the availability of suitable work may be established through presentation of expert evidence. *See id.* The supreme court summed up the employer's evidentiary burden in an odd-lot case as follows: "Once a prima-facie odd-lot case is made, it falls to the employer to prove that there is continuous and regular work available to the claimant in order to rebut the prima facie case of odd-lot unemployability." *Id.*, ¶ 57.

¶ 29. In sum, *Balczewski* and *Beecher* provide that once a claimant has established a prima facie odd-lot case, it falls to the employer to prove that the claimant is probably employable and that an actual, suitable job is regularly and continuously available to the claimant. It is not sufficient to show that the claimant is physically capable of performing light work, and then show that light work is available. *See Balczewski*, 76 Wis. 2d at 495; *Beecher*, 273 Wis. 2d 136, ¶¶ 54–55, 57.

¶ 30. Applying the above standard, we conclude the Commission erred by requiring Cargill to prove that

it informed prospective employers of Renz's age and disability, and other "relevant facts" about Renz to rebut Renz's prima facie case. We observe that neither *Balczewski* nor *Beecher* require an employer to disclose any descriptive information of a claimant to a prospective employer to satisfy its rebuttal burden. In addition, the Commission has not come forward with any logical or practical reason why it would be necessary for an employer to provide such information to a prospective employer to show that an "actual job" exists for the claimant. To determine the availability of suitable work, the employer must inquire of prospective employers the physical requirements of the job. The employer's duty in ascertaining whether an actual job exists is thus to *obtain* information from the prospective employer about the job requirements, not *provide* information about the claimant.

¶ 31. We question, moreover, the utility of requiring an employer to disclose certain facts relevant to an injured claimant's employability—such as an older claimant's age—to prospective employers as a means of ascertaining the availability of actual jobs. This requirement naively assumes that prospective employers will tell the truth when asked whether they would hire an older worker. We doubt that many of those employers inclined to discriminate against older applicants would freely admit that they would not hire a qualified, older worker because of the worker's age. The Commission's memorandum decision suggests that disclosure of an older claimant's age and other relevant facts is necessary because, despite federal and state anti-discrimination laws, discrimination persists. However, in light of our concerns about the reliability of employers' self-reports of their willingness to hire an older, disabled worker, we fail to see how requiring disclosure of an injured

claimant's age to a prospective employer in this context would assist the Department in taking into account the (suggested) persistence of age discrimination when determining the employability of an odd-lot injured claimant.

¶ 32. We further conclude that, by stating it would have preferred Cargill to produce evidence that it actually referred Renz to prospective employers, the Commission erred by establishing a preference for this kind of rebuttal evidence where no such preference is supported by the case law. At issue is the Commission's statement in its memorandum opinion that it preferred evidence "that the injured worker have been referred to employers with specific job openings actually available to the worker" as one way by which an employer may prove its rebuttal case. We see no such requirement in either *Balczewski* or *Beecher*. We do not mean to suggest that an employer cannot rely on evidence that it actually referred a claimant to a prospective employer to support its rebuttal case. Such evidence may be of great value to the employer in demonstrating that suitable work exists in the labor market for the claimant. However, to the extent that the Commission's decision establishes a preference for such evidence over other evidence showing the availability of suitable work for the claimant, we conclude that this view has no basis in *Beecher* and *Balczewski*.

### Remand

¶ 33. Because this court may not weigh the evidence and make factual determinations, we remand for a redetermination of Cargill's rebuttal case, and for further proceedings consistent with this opinion. *See Beecher*, 273 Wis. 2d 136, ¶ 59 ("Judicial review of a

230

worker's compensation award is limited to confirming or setting aside the award; modification, amendment or a substitution of the court's judgment for the agency's is improper."). We acknowledge that the Commission's determination that Cargill failed to rebut Renz's prima facie odd-lot case did not rely entirely on Cargill's failure to present evidence that it had disclosed Renz's age and disability to prospective employers. Its determination was based in part on a finding that Lemke's job listings lacked either full descriptions or, in some cases, any description, of the specific physical requirements for each job listed in the survey. Nonetheless, we are obligated to remand this case to the Commission for a redetermination of Cargill's rebuttal case based on the evidence of record.

## CONCLUSION

¶ 34. In sum, we conclude that the Commission erred in concluding that evidence that Cargill had disclosed Renz's disability, age and other relevant facts about Renz to prospective employers was necessary for Cargill to rebut Renz's prima facie case of odd-lot permanent and total disability. Such a requirement plainly expands an employer's burden on rebuttal in an odd-lot case beyond that set forth in *Balczewski* and *Beecher*. Further, we conclude that the Commission erred in establishing a preference for evidence in the employer's rebuttal case that the employer referred the claimant to prospective employers with specific job openings actually available. Accordingly, we reverse the circuit court order affirming the Commission's decision and set aside the agency's decision. We remand for a reassessment of Cargill's rebuttal evidence, based on the record, applying the standard set forth in *Balczewski* and *Beecher*, and for further proceedings consistent with this opinion.

*By the Court.*—Order reversed.

¶ 35. DYKMAN, P.J. (*dissenting*). Once again, the majority has scoured an administrative decision for errors, and having found a harmless one, blows up the whole decision. I continue to disagree with this concept. *See Deboer Transp., Inc. v. Swenson*, 2010 WI App 54, ¶¶ 21–34, 324 Wis. 2d 485, 781 N.W.2d 709 (Dykman, P.J., dissenting). This time, the majority's methodology is to ignore what the Administrative Law Judge (ALJ) and LIRC did, and focus on something they said. Ultimately, the majority has not changed the result here. On remand, LIRC will excise the words the majority condemns, and conclude once again that Renz has prevailed because Cargill failed to rebut his prima facie case. All the majority has done is to create make-work and require LIRC and the trial court to waste time. That isn't necessary.

¶ 36. The majority spends much of its decision examining two sentences, one written by the ALJ, and one written by LIRC. The majority condemns the following, written by the ALJ: "Indeed, none of the named potential employers were told of [Renz's] age, experience or restrictions . . . ." and the following, written by LIRC: "At a minimum, [a showing of an actual job available to Renz] requires the prospective employers to know all the relevant facts concerning the injured worker, and preferably that the injured worker ha[s] been referred to employers with specific job openings actually available to the worker."

¶ 37. I disagree that either of these sentences expands an employer's burden in an odd-lot case beyond that set forth in *Balczewski v. DILHR*, 76 Wis. 2d 487, 251 N.W.2d 794 (1977), and *Beecher v. LIRC*, 2004 WI 88, 273 Wis. 2d 136, 682 N.W.2d 29. At most, both sentences recognize that rebutting a prima facie showing of unemployability in an odd-lot case is difficult. An employer

faced with odd-lot liability can prove the availability of a job or jobs by asking another employer whether it has a job for a person with the claimant's qualifications and disabilities and is told that such a job exists. Or, the employer can obtain job availabilities from other employers which match the applicant's qualifications and disabilities. Either route gets to the same result. The majority's view that one way is acceptable and the other forbidden is a distinction without a difference.

¶ 38. However, for the purpose of this dissent, I will accept the majority's conclusion that the ALJ and LIRC wrote illegal requirements in their decisions. What the majority doesn't recognize is that both the ALJ and LIRC wrote what they wrote *after* Cargill made its inquiry into available jobs and *after* a hearing. When the hearing finished, all evidence that both parties chose to produce had been produced.

¶ 39. The majority and Cargill say that Renz proved a prima facie case for odd-lot entitlement to worker's compensation benefits. So, according to the case law the majority apparently accepts, the burden shifted to Cargill to show that a job or jobs, suitable for Renz, existed. *Balczewski*, 76 Wis. 2d at 498, made that clear when the court said: "[W]e could . . . conclude that the employer has had the opportunity to assume its burden of proof of demonstrating that Berniece Balczewski could obtain regular and stable employment despite her industrial injuries and her inherent handicaps in the job market."[1] *Beecher*, 273 Wis. 2d 136, ¶¶ 54–55, is no different:

---

[1] The court in *Balczewski v. DILHR*, 76 Wis. 2d 487, 498–99, 251 N.W.2d 794 (1977), remanded for further hearing because the odd-lot doctrine had not been recognized by the employer at the time of the hearing.

*Balczewski* holds that this burden requires the employer to show that there is an actual job that the claimant can do.

Accordingly, we conclude that the burden that shifts from the claimant to the employer under *Balczewski* is a burden of persuasion, but *only* as to the sub-issue of whether a job exists that the claimant can do.

¶ 40. Since everyone seems to agree that Renz met his burden of proving odd-lot entitlement to benefits, the only question is whether Cargill rebutted Renz's evidence. LIRC and the ALJ both said "no" and both did so based on the credibility of Renz's expert vocational witness and the failure of Cargill's expert witness to produce evidence showing the availability of a job which Renz could do, considering his age, disability, training and education. Here's what the ALJ said:

[Cargill's expert] found purported, available jobs within a relevant labor market but with greater losses (45 to 85 percent) based upon both the [medical examiners'] restrictions; *but, none of the positions appeared to offer him the select work required by them . . . .*

Based upon the record, I find the applicant's vocational expert's opinion is credible in concluding he is permanently totally disabled.

(Emphasis added.)

¶ 41. I do not have to quote LIRC's views as to the credibility of Renz, his vocational expert and his doctor because the majority has quoted LIRC's findings as to this in ¶ 9 of its opinion. The same is true as to Cargill's expert vocational witness, though it is apparent to me that LIRC found that Cargill's expert produced nothing to rebut Renz's prima facie case: "The job listings Lemke [Cargill's witness] compiled universally fail to

include a full description, or in most cases any description, of the specific physical requirements of the job." LIRC Decision at 2.

¶ 42. If the majority believes that Renz failed to prove a prima facie case of odd-lot permanent total disability, it would be helpful if the majority said that. If the majority believes that Lemke, Cargill's expert witness, produced *anything* to rebut Renz's prima facie case, it would be helpful if the majority said *that*. But it doesn't, and I take that as a concession that, except for the sentences the ALJ and LIRC wrote which the majority condemns, the majority would affirm the trial court, which affirmed LIRC.

¶ 43. Cargill's expert vocational witness was not hampered in the least by what the ALJ and LIRC said about how an employer must rebut a prima facie odd-lot eligibility case. The expert witness did her investigation long before, and without the benefit of what the ALJ and LIRC wrote. She testified, not knowing what the ALJ and LIRC would later write. She was in no way inhibited as to what she must do or could not do. All that came later.

¶ 44. My analysis of the testimony of Cargill's expert vocational witness is the same as LIRC's analysis, even without considering standard of review. I conclude that with a conceded prima facie case of odd-lot eligibility and nothing rebutting that prima facie case, the ultimate conclusion is obvious. I would affirm the trial court and LIRC.

¶ 45. That is as far as I need to go. But the majority also takes issue with more of LIRC's findings and conclusions. It cites LIRC's discussion of the adequacy of Renz's job search, though it concedes that this is not an issue here. It concludes: "[W]e fail to see how requiring disclosure of an injured claimant's age to a

prospective employer in this context would assist the Department in taking into account the (suggested) persistence of age discrimination when determining the employability of an odd-lot injured claimant." Majority, ¶ 31.

¶ 46. The fact the majority ignores is that Renz's prima facie case included not only his injury and disability but his age, education, training and efforts to obtain suitable employment. Renz's vocational expert, whom the ALJ and LIRC believed, considered all of these factors and more. LIRC found that despite anti-discrimination laws, "there is an inclination for many employers to discriminate against older or disabled individuals. While state and federal laws do address this problem, they do not eliminate it."[2] Thus, if Cargill wanted to rebut this, or other factors the ALJ, LIRC and Renz's vocational expert considered in their conclusion that Renz was totally, permanently disabled, Cargill would have to find the means to do so.

¶ 47. While the majority fails to see the relevance of a disclosure of Renz's age, the reason LIRC made the majority's perceived illegal finding is initially found in Renz's expert witnesses' earning capacity analysis:

> The Worker's Compensation Act of Wisconsin and The Wisconsin Administrative Code 80.34 were used as guidelines in determining the claimant's pre-injury and future earning capacity. The following factors were considered:
>
> • Age; Education; Training;
>
> • Previous work experience;

---

[2] The majority makes its own finding about age and disability discrimination by adding "(suggested)" to LIRC's finding.

236

- Present occupation and earnings;

- Efforts to obtain suitable employment;

- Likelihood of future suitable occupational change;

- Willingness to make a reasonable change in residence to secure suitable employment;

- Success and willingness to participate in a reasonable physical and vocational rehabilitation program; and

- Other pertinent evidence such as medical opinions related to the injury in question, and with special attention paid to permanent medically defined physical restrictions.

. . . .

It is possible that a job could be identified that would match Mr. Renz's capacity for four to six hours of work per day, lifting no more than 10 pounds, but the number of such jobs in the labor market would be very limited. When such part-time openings would occur, it is likely that younger candidates would be hired and Mr. Renz would be passed over due to his age and his various physical limitations.

Therefore, based on the opinion of Dr. Anderson, the services Charles Renz has to offer employers are so limited in quality, dependability, and quantity that a reasonably stable labor market for his services would not exist. He would be considered permanently and totally (100%) disabled.

¶ 48. These factors match up with WIS. ADMIN. CODE § DWD 80.34 (Oct. 2007) which provides:

(1) Any department determinations as to loss of earning capacity for injuries arising under s. 102.44(2)

and (3), Stats., shall take into account the effect of the injured employee's permanent physical and mental limitations resulting from the injury upon present and potential earnings in view of the following factors:

(a) Age;

(b) Education;

(c) Training;

(d) Previous work experience;

(e) Previous earnings;

(f) Present occupation and earnings;

(g) Likelihood of future suitable occupation change;

(h) Efforts to obtain suitable employment;

(i) Willingness to make reasonable change in a residence to secure suitable employment;

(j) Success of and willingness to participate in reasonable physical and vocational rehabilitation program; and

(k) Other pertinent evidence.

¶ 49. I believe that the reason LIRC wrote what the majority condemns is because LIRC found authority in Wis. Admin. Code § DWD 80.34 to do so. I agree with LIRC. The majority fails to consider § DWD 80.34, so I cannot determine whether the majority believes that § DWD 80.34 is irrelevant, not present in this case, improperly enacted, at variance with some statute or possibly unconstitutional. Those are the usual reasons courts do not follow administrative rules, or more specifically, an administrative agency's use of its rule. Without more, I cannot tell why the majority ignores § DWD 80.34

238

¶ 50. In *Advance Die Casting Co. v. LIRC*, 154 Wis. 2d 239, 251, 453 N.W.2d 487 (Ct. App. 1989), we said: "Section Ind. 80.34 [now Wis. Admin. Code § DWD 80.34] of the code applies loss of earning capacity to injury under the odd-lot doctrine . . . ." *Beecher* discussed § DWD 80.34:

> The rule applies generally to "[a]ny department determinations as to loss of earning capacity" for injuries causing permanent partial or permanent total disability. It is, however, only a list of factors to be considered in evaluating loss of earning capacity. Section 80.34 is not an evidentiary rule; neither does it impose a burden of proof, establish a set of evidentiary requirements, or mandate the substantive elements of a claim.
>
> Taking the first factor, the applicant's age, as an example, § 80.34 does not eliminate applicants who are below a certain age or otherwise establish a particular evidentiary requirement regarding age that must be met in order to qualify for loss of earning capacity benefits . . . . The relative weight of any one of the § 80.34 factors depends upon its consideration in context with the others.

*Beecher*, 273 Wis. 2d 136, ¶¶ 42–43. That is exactly what LIRC did here.

¶ 51. Ultimately, this is a credibility case. The result should be predictable. But for some reason, the majority bites on Cargill's red herring and concludes differently. I can therefore only respectfully dissent.