PER CURIAM.
¶1 Michael Bukovic appeals a circuit court judgment affirming a Wisconsin Labor and Industry Review Commission (LIRC) decision that affirmed an administrative law judge's (ALJ) dismissal of Bukovic's worker's compensation application. We affirm.
BACKGROUND
¶2 This matter arises out an explosion that occurred when Bukovic attempted to transfer argon gas to a tank designed to hold acetylene gas. Bukovic worked at CPF, Inc. (CPF), a small machine and fabrication shop. Bukovic did painting, sand blasting and welding. Unrelated to his work, Bukovic bought a new welder for his home. The new welder required argon gas, but Bukovic did not have argon gas, or an argon tank. He decided to take a gas tank from CPF and transfer CPF's argon gas into it, so that he could take the argon home for his welder.
¶3 In order to facilitate the gas transfer, Bukovic took a transfer hose from his home to work. Larry Colburn, who managed CPF, saw Bukovic arrive at work on the day of the accident with a hose in his hand. When asked why he brought a hose to work, Bukovic said he needed to add fittings to replace a broken hose on a piece of construction equipment he had at home. Shortly before noon, Bukovic went to a storage area where gasses were kept, and he attached fittings to the transfer hose, which he then used to attach an old acetylene tank to CPF's commercial argon tank. However, the argon was stored at a higher pressure than the acetylene tank was designed to hold. When Bukovic attempted the argon gas transfer, the acetylene tank exploded under the pressure, injuring Bukovic.
¶4 Bukovic subsequently filed a worker's compensation application, identifying the cause of injury as "[a] tank exploded." At the hearing, Colburn testified that he was working in his office when he heard a big boom that shook the windows. He went to the main shop floor but did not see anyone. He then noticed dust rolling out of a doorway near where gas was stored. When he entered the area, he saw Bukovic on the floor and heard the sound of gas escaping. He saw a hose with one end hooked to the argon tank and the other end whipping around in the air and releasing gas.
¶5 Bukovic admitted he was taking the argon gas for himself, but he disputed that he brought a hose to work. However, Bukovic also testified that he remembered very little about that day and did not even remember going to work. Bukovic also testified he intended to pay for the argon gas later, but he admitted that he had no work-related reason to be near the gas tanks that morning.
¶6 CPF allows employees to purchase items out of its inventory, but Colburn tells employees to always check with him before taking inventory for personal use. Bukovic never asked to purchase argon gas. Bukovic could have theoretically purchased a full argon tank through CPF, but Colburn would not have let Bukovic transfer argon gas on site because it was not safe, due to the pressure tolerance difference between the argon tank and the tank Bukovic used. CPF buys full tanks of compressed gas and, when they are empty, a supplier takes the empty tanks and exchanges them for full tanks. CPF does not transfer high-pressure argon, and Bukovic had never transferred gas before as part of his work for CPF, nor had he seen anyone transfer argon from CPF's argon tanks.
¶7 Following the hearing, the ALJ found that Bukovic "is not credible." The ALJ further found:
[Bukovic] never intended to purchase Argon gas or supplies under Respondent's purchasing program. Instead, [Bukovic] decided to pilfer argon gas from Respondent's supply and purloin the small tank which [Bukovic] unilaterally decided was abandoned. [Bukovic's] behavior was entirely secretive.
....
In short, [Bukovic's] motivation for this action was purely personal, the method chosen to do so was outside of any of the normal duties of the work force, the overall effort required a substantial amount of time and planning unrelated to any work for respondent and [Bukovic] knew the effort was well outside respondent's policy of accommodating its employees' purchases of supplies. [Bukovic] was not performing services growing out of and incidental to his employment, nor did this accident arise out of his employment....
¶8 LIRC affirmed the ALJ's dismissal of Bukovic's application, adopting as its own the ALJ's findings and conclusions. In its memorandum opinion, LIRC stated that it was satisfied Bukovic "was not intending to pay for the argon at the end of the day. Rather, the commission concludes he simply intended to take the argon gas from the employer without the employer's permission." LIRC also stated:
Given that the applicant was engaged in taking argon from the employer for his own personal use, the applicant was in a substantial deviation from his employment when the incident occurred. As such the applicant was no longer in the course of his employment.
¶9 The circuit court affirmed LIRC's decision, emphasizing the finding that Bukovic was not credible. The court stated, "It appears clear from the finding by the Commission that they had no doubt that he was intending to steal gas and he was outside of the scope of his employment...." The court further concluded "this isn't a situation where it was a close decision." Bukovic now appeals.
DISCUSSION
¶10 The issue in this case is whether, at the time of his injury, Bukovic was "performing services growing out of and incidental to his ... employment." WIS. STAT. § 102.03(1)(c) 1 (2015-16).[1] As the circuit court correctly observed, this issue turns on the standard of review. In this regard, we review LIRC's decision on appeal, and its findings concerning Bukovic's conduct at the time of the injury are questions of fact. See Nottleson v. DILHR. , 94 Wis. 2d 106, 113-15, 287 N.W.2d 763 (1980). LIRC's findings of fact are conclusive in the absence of fraud, if they are supported by credible and substantial evidence. Cargill Feed Div./Cargill Malt v. LIRC , 2010 WI App 115, ¶13, 329 Wis. 2d 206, 789 N.W.2d 326. We shall also not substitute our judgment for LIRC's as to witness credibility. WIS. STAT. § 102.23(6). It is well settled that a worker's compensation claimant has the burden of proving all the facts essential to the recovery of compensation beyond a legitimate doubt. Conley v. Industrial Comm'n , 30 Wis. 2d 71, 85-86, 140 N.W.2d 210 (1966).
¶11 Here, credible and substantial evidence exists upon which a reasonable fact finder could rely to support the findings that: (1) Bukovic never intended to purchase argon gas or supplies under CPF's purchasing program; (2) his motivation at the time of the accident was purely personal; and (3) Bukovic knew the methods chosen to acquire the argon gas were outside of any normal employment duties. In particular, Bukovic did not ask to buy the argon gas, and he misrepresented the reason he brought a hose to work; he secretly stole the acetylene tank and fabricated the transfer hose used to connect the acetylene tank to the argon gas, which he admittedly intended to use for his personal welder; and he conducted his actions at times when he might escape observation. Bukovic's actions did not in any way further the business purposes of his employer. Instead, Bukovic was involved in a substantial deviation from his work duties, which acted as a bar to any worker's compensation recovery. See Nigbor v. DILHR , 120 Wis. 2d 375, 384, 355 N.W.2d 532 (1984).
¶12 Bukovic argues LIRC erred because a "common law presumption is not recognized." According to Bukovic, "Odius and dishonest things are not to be presumed in law." He also contends LIRC's credibility evaluation was based upon erroneous findings of fact, and this "compounded the significance of further error in construing inferences against Bukovic without considering the common law presumption in his favor." However, Bukovic provides no citation to legal authority for the proposition that such a presumption applies to worker's compensation claims, which is a statutory scheme not rooted in the common law. But more importantly, this case turns on ordinary fact finding, not presumptions. In this regard, Bukovic relies on a version of the facts LIRC rejected. Here, the basic facts, and reasonable inferences from those facts, supported the findings that Bukovic was not credible, his actions were purely personal, and he was attempting to steal argon gas from work in substantial deviation from his employment.
¶13 Bukovic insists he was involved in a mere insubstantial deviation from work. He contends that a "deviation to purchase argon gas for personal purposes, if allowed by the employment contract, can be deemed insubstantial." He contends: "One term implied in the employment contract is the thirty minute break time provided by [ WIS. ADMIN. CODE §] DWD 272.12(2)(c)1." Bukovic suggests he would be allowed to take a fifteen-minute break from 11:45 a.m. to noon. He notes the accident happened at 11:52 a.m. Therefore, "[s]hould the intended deviation be from 11:45 to noon, it would be authorized by the contract." Bukovic argues LIRC erred by failing to make a specific factual finding concerning the length of the incident, further asserting a "remand is necessary for LIRC to further evaluate if such a 15 minute break is a substantial deviation...." However, the duration of Bukovic's deviation is irrelevant. The deviation was a complete abandonment of his work duties, and he was no longer performing services growing out of, and incidental to, his employment. Bukovic abandoned his job responsibilities in order to take the small acetylene tank and fabricate the hose in order to attempt to transfer argon gas. His actions were a complete departure from his employment.
¶14 Bukovic next argues that CPF breached a duty to train him on transferring gas, and that he was in a special "zone of danger," thereby invoking the "positional risk doctrine," which permits worker's compensation liability when the "obligations or conditions of employment create the zone of special danger out of which the injury arose." See Ide v. LIRC , 224 Wis. 2d 159, 172, 589 N.W.2d 363 (1999). It does not appear this argument was raised before the ALJ, and therefore Bukovic has forfeited it. In any event, Bukovic's job did not expose him to a risk from transferring high-pressure gas. In fact, the evidence shows no one at CPF transferred argon between tanks. When a tank was empty, a supplier took the empty tanks and exchanged them for full tanks. As the ALJ aptly stated, Bukovic was pilfering argon gas into a purloined acetylene tank for purely personal reasons. His behavior was entirely secretive, his activities were not reasonably required by the terms and conditions of his employment, and his positional risk argument thus fails on the merits. See id. at 172-73.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

References to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.